Gerald FRY, Appellant,

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 14–97–00485–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 25, 1998.

Rehearing Overruled Oct. 1, 1998.

Gerald Fry, Houston, for appellant.

Linda Acevedo, Austin, for appellee.

Before YATES, EDELMAN, and O'NEILL, JJ.

## OPINION

YATES, Justice.

This is an attorney discipline matter. The trial court granted summary judgment in favor of the Commission for Lawyer Discipline ("the Commission") on the issue of professional misconduct by Gerald Fry. We affirm.

In January of 1994, Fry was contacted by Ervin McLeggan to discuss the possibility of McLeggan retaining Fry for the appeal of a federal court conviction in Pennsylvania. Fry claims that while he was not the attorney of record for McLeggan in the criminal case, he was hired "to advise him concerning his case, to be the attorney of record for the sentencing, the motion for new trial, and the appeal." In his affidavit, Fry claimed that McLeggan hired him with a $2,000.00 retainer, and secured Fry's attorney's fees with a Deed of Trust and a Real Estate Lien Note on McLeggan's house in Fort Bend County. According to Fry's affidavit, the deed and the note were for $40,000.00 "for attorney fees and expenses with a payout over 40 months at a rate of $1,000.00 per month." He stated that McLeggan agreed to the fee and signed the deed and the note himself. McLeggan stated in his deposition, however, that Fry did not represent him in the criminal matter; rather, he was represented by attorney Cheryl Sturm of Pennsylvania.

Though McLeggan claimed he never retained Fry to represent him in the federal criminal matter, he did hire Fry to assist him in selling his home in Fort Bend County, Texas. The house was sold in August of 1994, and Fry received a check in the amount of $21,487.60 on August 31, 1994. Fry's affidavit states that the money he received from the sale of the house "partially paid the attorney fee [sic] and expense lien I had on the house." Fry swore that he executed a full release of the lien when he received the check. Fry claimed there was no conflict over the ownership of the funds as of September 6, 1994. However, on September 4, 1994, McLeggan sent a letter to Fry instruct-ing him to deliver "the full amount of the check which you have receive [sic] from the closing of my property to my wife." Fry, on the other hand, claims McLeggan asked if he could borrow $10,000.00 to give to his wife. Fry sent McLeggan's wife a check for $10,-000.00 on September 6, 1994. The check was written on Fry's client trust account.

On September 27, 1994, McLeggan again wrote to Fry and instructed him to send an additional $10,000.00 to his wife by October 3, 1994, and to put the balance, plus $1,000.00 McLeggan's brother apparently gave Fry, into an escrow account in the event McLeggan needed Fry's services in the future. McLeggan sent another letter to the same effect on December 8, 1994, but Fry did not send the additional $10,000.00 to McLeggan's wife until December 20, 1994. This time, the check was written on Fry's operating account.

Fry claimed in his affidavit that he represented McLeggan throughout this time period. McLeggan's letters, however, clearly demonstrate that Fry was not representing McLeggan except as to the sale of the house, and the sale was completed in August. Fry stated in his affidavit that it was not until after McLeggan filed a grievance against him that he ceased his representation of McLeggan. Fry claims the second $10,000.00 that he sent to McLeggan's wife was money from his earned attorney's fees, and that it constituted a refund of attorney's fees.

■ Because a controversy existed as to the ownership of the proceeds from the sale of the house, the Commission alleged a violation of subsections (a) through (c) of rule 1.14 of the Texas Disciplinary Rules of Professional Conduct. Subsections (a) through (c) state, in pertinent part:

(a) A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property. Such funds shall be kept in a separate account, designated as a "trust" or "escrow" account, maintained in the state where the lawyer's office is situated.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds ... that the client or third person is entitled to receive.

(c) When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and the other person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. All funds in a trust or escrow account shall be disbursed only to those persons entitled to receive them by virtue of the representation or by law. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separated by the lawyer until the dispute is resolved, and the undisputed portion shall be distributed appropriately.

TEX.DISCIPLINARY R.PROF.CONDUCT 1.14(a)–(c) (1989), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Pamph.1997) (STATE BAR RULES art. X, § 9). In summary, rule 1.14 requires an attorney who receives funds, which belong in whole or in part to a client or third person, to deposit them into a trust account and promptly deliver the appropriate portion to the client or third person. *See* TEX.DISCIPLINARY R.PROF.CONDUCT 1.14(a)–(b) (1989). Moreover, and important to this case, is the requirement that if there is a dispute over the ownership of the funds, the attorney must keep the funds in the trust account until the dispute is resolved. *See* TEX.DISCIPLINARY R.PROF.CONDUCT 1.14(c) (1989).

The Commission filed a motion for summary judgment and a first amended motion for summary judgment. In its first amended motion, the Commission alleged there was no genuine issue of material fact and that it had proved each of the allegations against Fry as a matter of law. In support of its motion, the Commission submitted: (1) responses to requests for admissions; (2) responses to interrogatories; (3) three letters from McLeggan to Fry; (4) a letter from McLeg-

gan to Nations Bank; (5) a copy of the docket in the federal criminal case against McLeggan; (6) a copy of the brief prepared, signed, and filed by Cheryl Sturm on behalf of McLeggan in the federal case; (7) excerpts from McLeggan's deposition of April 9, 1996; and (8) Fry's bank records relating to his trust account.

Fry filed a response and two supplemental responses to the Commission's motions claiming that a genuine issue of material fact existed as to at least one element of the claims against him. In support of his responses, Fry included: (1) his own affidavits; (2) the Deed of Trust and the Real Estate Lien Note; (3) the document showing his release of the lien; and (4) a copy of the September 27, 1994, letter from McLeggan to Fry. Fry argued the trial court could not conclude that a controversy over the funds existed before the release of the lien and the transfer of the funds, or that McLeggan "disavowed the existence of the attorney-client relationship." Fry claimed in his response that he represented McLeggan and that the evidence supported that belief, and that McLeggan agreed to pay him $40,000.00 for his services. Therefore, there was no violation of the disciplinary rules.

The trial court granted the Commission's first amended motion, finding that the Commission had proved as a matter of law that Fry violated rules 1.14(a)–(c) of the Texas Disciplinary Rules of Professional Conduct. After a hearing on the appropriate discipline to be assessed against Fry, the parties agreed to the imposition of a public reprimand. Fry perfected this appeal.

The standard for reviewing summary judgments is well established. Summary judgment is proper only when the movant establishes there are no genuine issues of material fact and proves he is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management, Co.*, 690 S.W.2d 546, 548 (Tex. 1985); *Shannon v. Texas Gen. Indem. Co.*, 889 S.W.2d 662, 663 (Tex.App.—Houston [14th Dist.] 1994, no writ). Evidence favorable to the non-movant will be taken as true, every reasonable inference will be indulged in favor of the non-movant, and any doubts resolved in its favor. *See Nixon*, 690 S.W.2d

at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). A plaintiff who moves for summary judgment must prove he is entitled to judgment as a matter of law on each element of the cause of action. *See MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *Acme Brick v. Temple Assocs., Inc.,* 816 S.W.2d 440, 442 (Tex.App.—Waco 1991, writ denied); *Harris County v. Walsweer,* 930 S.W.2d 659, 663 (Tex.App.—Houston [1st Dist.] 1996, writ denied).

■ In his first point of error, Fry contends the judgment is void "because it was based in whole or part on the pleadings which are not competent summary judgment proof." In the order granting summary judgment, the trial court stated, in pertinent part:

The Court based upon all the pleadings and papers on filed in this case and the law applicable thereto, is of the opinion and so finds that the material allegations in Petitioner's Second Amended Disciplinary Petition are true regarding Respondent's violation of the ... Rules of the Texas Disciplinary Rules of Professional Conduct.

Rule 166a(c) provides that a summary judgment shall be rendered if the discovery documents, *pleadings,* admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c) (emphasis added). The judgment in this case simply includes a partial recitation of the standard set out in the rule. This does not indicate, as Fry argues, that all or part of the judgment was granted based on the pleadings alone. *See Hidalgo v. Surety Sav. and Loan Ass'n,* 462 S.W.2d 540, 545 (Tex.1971) (holding that pleadings cannot be regarded as summary judgment evidence). We overrule Fry's first point of error.

In point of error two, Fry complains that the judgment is "constitutionally infirm as applied to appellant and therefore void in part for vagueness and indefiniteness and any valid part being so dependent on the invalid must fall with it." Though Fry frames his complaint as a challenge to the judgment, his argument reveals that his complaint is actually that the language of rule 1.14(c) of the Rules of Professional Conduct is vague and unconstitutional.

■ The non-movant in a summary judgment case must expressly present to the trial court any reason that would defeat the movant's right to summary judgment by filing a written answer or response to the motion. *Kaye v. Harris County Mun. Util. Dist. No. 9,* 866 S.W.2d 791, 793 (Tex.App.—Houston [14th Dist.] 1993, no writ) (citing *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993)). An appellate court cannot consider as grounds for reversal, issues the non-movant did not expressly present to the trial court by written response to the summary judgment motion. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 676 (Tex.1979). If the non-movant does not expressly present grounds that would defeat the movant's right to a summary judgment by filing a written answer or response, he is limited to arguing on appeal that the movant's motion was legally insufficient. *Id.* These requirements apply equally to constitutional claims. *See Dreyer v. Greene,* 871 S.W.2d 697, 698 (Tex. 1993) (holding that claims, including constitutional claims, must be asserted in trial court to be raised on appeal).

■ We have reviewed Fry's responses to the Commission's motion and first amended motion for summary judgment. Fry never raised a complaint concerning the constitutionality of rule 1.14(c). Therefore, he may not assign this ground as error on appeal. *See Clear Creek Basin Auth.,* 589 S.W.2d at 676. We overrule Fry's second point of error.

■ In points of error three through five, Fry claims the trial court erred in granting the Commission's motion for summary judgment because his summary judgment proof created fact issues. Specifically, Fry argues there are fact issues as to whether (1) the funds from the sale of the house are funds "belonging in whole or part to clients"; and

(2) the funds from the sale of the house were earned fees pursuant to an agreement to pay Fry $40,000.00 in attorney's fees.

The summary judgment proof presented by the Commission shows that McLeggan authorized Fry to represent him in the sale of the house. The evidence also shows that McLeggan never hired Fry to represent him in any matter other than the sale of the house, and that McLeggan agreed to pay Fry $1,000.00 from the sale proceeds for his services.

The house was sold in August, and on August 31, 1994, Fry received the check from the sale. On September 2, 1994, Fry deposited this check into his trust account. The bank records show Fry deducted $2,000.00 in cash from the deposit. Two days after the deposit, the summary judgment proof shows McLeggan wrote to Fry stating:

I am very displease [sic] by the way you try to handle my funds. I don't take kindly to your action, you have displayed to me that all you wanted was my money, with no consideration about the wellbeing [sic] of my family. I am concerned about the welfare of my Wife and children more than the situation which I am in at this moment. *I am instructing you at this time to deliver the full amount of the check which you have receive [sic] from the closing of my property to my Wife* ... I have authorize [sic] you to collect this money for me because I did not have anyone trust worthy enough in Texas to do it. . . .

I have been anticipating hiring you to do my appeal from this Federal charge, if needed [sic] be, but I am currently being represented by a Federal Defender, so *there is no need for you to do anything on my behalf or to withhold any amount [sic] of my funds unless I had [sic] instruct that you do so. You have represent [sic] me in the past and I admire you as an attorney but until the time comes for me to have you officially representing me, please deliver $20,000 to my wife. You*

*can hold onto the balance plus the $1,000 which my brother Lester has given to you earlier. Please put that amount in an Escrow account, while I contemplate hiring you. Please make this [sic] funds available to my Wife by September 10, 1994.*

(emphasis added).

Fry admitted he received this letter, yet on September 6, 1994, the summary judgment proof shows that he sent McLeggan's wife a check for $10,000.00, not the $20,000.00 as instructed by McLeggan in his letter. On September 27, 1994, McLeggan wrote a second letter reiterating his instructions to Fry. The evidence shows it was not until twelve days after McLeggan sent a third letter to Fry, again instructing him to send the balance of the $20,000.00 to his wife, that Fry complied. The summary judgment proof shows that when that check was sent, it was drawn not on Fry's trust account, but on his operating account. Further, the Commission attached Fry's trust account records as an exhibit. The trust records show he did not maintain the money in his trust account before it was finally disbursed to McLeggan's wife.[1]

Even if Fry believed the money was his per the note and the deed of trust or because he had otherwise "earned" it, the evidence proves he knew by September 4, 1994, that McLeggan thought otherwise. Pursuant to the rules, Fry was obligated to keep the funds in his trust account until the dispute was resolved. Instead, his trust account records prove that sometime after September 7, 1994, Fry took the money from the sale of the house out of his trust account. Thus, we find the Commission conclusively proved Fry violated rules 1.14(a)–(c).

Once a movant establishes its right to summary judgment as a matter of law, the burden shifts to the non-movant to raise a fact issue precluding summary judgment. *See Delcourt v. Silverman*, 919 S.W.2d 777, 783 (Tex.App.—Houston [14th Dist.] 1996, writ

---

1. On September 9, 1994, the closing balance in Fry's trust account was $14,073.73, and the first $10,000.00 check to McLeggan's wife had not yet cleared. Thus, the balance in Fry's trust account fell below the $20,000.00 that Fry was required to safeguard for his client, McLeggan. The summary judgment proof shows that from September 1994 to January 1995, Fry never had enough money in his trust account to safeguard the $20,000.00 that McLeggan thought was his money.

denied), *cert. denied,* —— U.S. ——, 117 S.Ct. 1698, 137 L.Ed.2d 824 (1997); *Lentino v. Cullen Ctr. Bank and Trust,* 919 S.W.2d 743, 745 (Tex.App.—Houston [14th Dist.] 1996, writ denied). Thus, because the Commission established its right to judgment as a matter of law, the burden shifted to Fry to adduce evidence raising a fact issue precluding summary judgment. *Id.*

Fry claims his summary judgment proof raises a fact issue as to the ownership of the funds and whether they were properly disbursed. He argues that the deed of trust and the note show McLeggan agreed to pay Fry $40,000.00 in attorney's fees and expenses for his representation, and that payment was secured by a lien on the house. Based on the note and the deed of trust, Fry claims the check from the sale of the house was in satisfaction of the lien, and therefore, on the date he received the check for $21,487.60, he had the right to do "whatever he wanted with the money." He argues that in any event, the funds were "non refundable [sic] retainer fees secured properly by lien thus not being client funds." We disagree.

The deed of trust states it is "To secure Gerald Fry in the payment to him by Ervin G. McLeggan of $40,000.00 for attorney's fees and expense." Thus, the deed was to *secure* payment of fees and expenses, assuming Fry did the work he alleges he was hired to do. The deed of trust was not an agreement to pay Fry $40,000.00 whether he performed or not. As we stated, McLeggan's correspondence with Fry and the bank, which held the lien on the house, proves Fry was hired only to handle the sale of the house, for which he was to be paid $1,000.00.

Fry also contends that even if the funds from the sale of the house were not his by virtue of the note and the deed of trust, there is a fact issue as to whether the money was "earned attorney's fees at the time of the transfer out of the trust fund." He argues that at the time he transferred $10,000.00 from his trust account to his operating account, he had been representing McLeggan for months. Thus, the funds may have belonged to him as "earned" fees.

As proof that he was hired to do more than just represent McLeggan in the sale of the house, Fry refers to his affidavit. In the affidavit he states McLeggan hired him "to represent him on various legal matters which included the sale of a BMW automobile, the sale of the house in Sugarland, Texas, and the sentencing, the motion for new trial, and the appeal of case number 93–CR–165–4." Fry, however, does not support this allegation with any facts showing specific work performed with respect to any of these matters. As previously noted, the other evidence in the record shows he was hired only to represent McLeggan in the sale of the house. Fry's statement regarding his alleged representation of McLeggan is conclusory. Mere conclusory statements do not constitute effective summary judgment proof and need not be given the same presumptive force as allegations of fact. *See Delgado v. Methodist Hosp.,* 936 S.W.2d 479, 483 (Tex. App.—Houston [14th Dist.] 1996, no writ). The affidavit must set forth facts, not conclusions. *See Cuellar v. City of San Antonio,* 821 S.W.2d 250, 252 (Tex.App.—San Antonio 1991, writ denied); *Smith v. Christley,* 684 S.W.2d 158, 161 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (holding that mere conclusion of affiant, without some supporting facts, are insufficient to raise fact issue necessary to preclude summary judgment). Therefore, Fry's affidavit does not raise a fact issue as to whether he was hired by McLeggan to do more than represent him with respect to the sale of the house.

Finally, to prove there was no dispute concerning ownership of the funds, Fry again refers to his affidavit. In the affidavit, Fry states: "There was no controversy or dispute over ownership or purpose of the funds at that time, September 6, 1994." First, this statement is conclusory, and therefore, not competent summary judgment proof. *See Cuellar,* 821 S.W.2d at 252; *Smith,* 684 S.W.2d at 161. Moreover, Fry's stated belief that he was entitled to the money does not raise a fact issue on whether a dispute existed as to the ownership of the funds; rather, it solidifies the Commission's position that a dispute existed. The very fact that Fry thought he owned the money, while McLeggan clearly believed otherwise, placed the funds in dispute and required Fry to keep

the money in his trust account until the dispute was resolved.

Accordingly, we hold that Fry has failed to raise a genuine issue of material fact to preclude the Commission's right to summary judgment. We affirm the trial court's judgment.