# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00033-CV

**Tracy Dee Cluck, Appellant**

**v.**

**Commission for Lawyer Discipline, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN304165, HONORABLE MARY D. ROMAN, JUDGE PRESIDING

## O P I N I O N

The State Bar of Texas Commission for Lawyer Discipline brought a disciplinary action against attorney Tracy Dee Cluck, alleging that he committed professional misconduct by violating multiple provisions of the Texas Disciplinary Rules of Professional Conduct[1] in connection with his representation of Patricia A. Smith. Both parties filed motions for summary judgment. The trial court denied Cluck's motion and granted the Commission's motion, holding that Cluck committed professional misconduct by violating each of the rules cited by the Commission. Cluck appeals, arguing that his conduct did not violate any disciplinary rules. We will affirm the judgment of the district court.

---

[1] The Texas State Bar promulgates the Texas Disciplinary Rules of Professional Conduct to "define proper conduct for purposes of professional discipline." Tex. Disciplinary R. Prof'l Conduct preamble: scope ¶ 10, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2005) (Tex. State Bar R. art. X, § 9).

# BACKGROUND

Smith approached Cluck in June 2001, looking for an attorney to represent her in a divorce case. Cluck agreed to represent Smith and had her sign a contract for legal services, which states, "In consideration of the legal services rendered on my behalf in the above matter I agree to pay TRACY D. CLUCK a non-refundable retainer in the amount of $15,000 . . . ." Following that sentence, a handwritten provision explains, "Lawyer fees are to be billed at $150 per hour, first against non-refundable fee and then monthly thereafter. Additional non-refundable retainers as requested." The contract states that "no part of the legal fee is to be refunded" "should the case be discontinued, or settled in any other matter."

Smith paid Cluck $15,000 on June 28, 2001. Cluck began work on Smith's divorce, including filing the petition and obtaining service on Smith's husband. On July 7, Smith asked Cluck to cease action on her divorce because she wished to reconcile with her husband. Because her husband had already been served, Cluck advised Smith to leave the action pending in case she changed her mind; Smith agreed. On July 2, 2002, after receiving notice that her case was set on the dismissal docket, Smith contacted Cluck about resuming work on her divorce. Cluck requested that Smith sign an amendment to their contract, in which she agreed to pay an additional $5,000 "non-refundable fee" and to increase Cluck's hourly rate to $200 per hour. Smith signed the amendment and paid Cluck the $5,000, and Cluck resumed work on her case.

On August 22, 2002, Smith terminated Cluck as her attorney because she was dissatisfied with the lack of progress made by Cluck on her case and his lack of responsiveness to her phone calls. She requested the return of her file, which she picked up two weeks later. On

2

October 10, 2002, Smith wrote a letter to Cluck asking for a detailed accounting and a refund of the $20,000, less reasonable attorney's fees and expenses. Cluck replied on December 4, 2002, explaining that he did not respond sooner because he was on vacation when Smith's letter arrived and because an electrical storm destroyed his computer and phone systems. He stated that an itemization of his expenses and time billed was included in her file and in bills he had previously mailed to her. Cluck advised Smith that he did not believe she was entitled to a refund.

The parties dispute the number of hours that Cluck spent working on Smith's case. The Commission asserts that Cluck's billing indicates that he worked 11 hours, while Cluck contends he worked 28.5 hours. It is undisputed that Cluck ultimately collected $20,000 from Smith, which he deposited in his operating account, and that Cluck failed to refund any portion of the collected fees to Smith.

Smith filed a complaint with the State Bar of Texas, and the Commission initiated this suit, alleging that Cluck committed professional misconduct by violating several Texas Disciplinary Rules of Professional Conduct. The Commission claimed that Cluck failed to promptly comply with a reasonable request for information; contracted for, charged, and collected an unconscionable fee; failed to adequately communicate the basis of his fee; failed to hold funds belonging in whole or in part to a client in a trust account; and failed to promptly deliver funds his client was entitled to receive and render a full accounting regarding those funds upon the client's request. *See* Tex. Disciplinary R. Prof'l Conduct 1.03(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2005) (Tex. State Bar R. art. X, § 9) (requiring prompt compliance with reasonable requests for information), 1.04(a) (prohibiting contracting for, charging, or collecting

3

unconscionable fees), 1.04(c) (mandating communication of basis of lawyer's fee), 1.14(a) (providing that lawyer must hold funds belonging in whole or in part to client in trust account), 1.14(b) (requiring prompt delivery of funds that client is entitled to receive and accounting upon request).

Cluck and the Commission both filed motions for summary judgment. The trial court denied Cluck's motion and granted the Commission's motion, finding that Cluck violated all the disciplinary rules cited by the Commission and thus committed professional misconduct. The court imposed a twenty-four-month fully probated suspension from the practice of law on Cluck and ordered him to pay court costs and restitution to Smith in the amount of $15,000. Cluck appeals, contending that he did not violate the disciplinary rules.

**DISCUSSION**

Cluck raises three issues on appeal. First, he argues that the fee he charged Smith was not unconscionable. Second, Cluck asserts that, because the fee was not unconscionable, he did not violate the rules regarding refunding unearned fees, holding funds in a trust account, and failing to adequately communicate the basis of the fee. Finally, Cluck insists that he promptly complied with the reasonable request for information under the circumstances. Thus, he argues that the trial court erred by holding that Cluck committed professional misconduct and granting summary judgment in favor of the Commission.

The violation of one disciplinary rule is sufficient to support a finding of professional misconduct. *See* Tex. R. Disciplinary P. 1.06(V)(1), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A-1 (West 2005) (defining "Professional Misconduct" to include "[a]cts or omissions by an

4

attorney . . . that violate one or more of the Texas Disciplinary Rules of Professional Conduct"). Summary judgment orders in attorney discipline appeals are governed by traditional summary judgment standards. *See Fry v. Commission for Lawyer Discipline*, 979 S.W.2d 331, 333–34 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). When a trial court's order granting a summary judgment does not specify the ground or grounds relied on for the ruling, it must be affirmed on appeal if any of the grounds asserted in the motion are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993). When the order states the grounds relied on, it can be affirmed only on the specified grounds. *Id.* Here, because the order granting summary judgment states that the trial court relied on every ground alleged by the Commission and because each ground alone is sufficient to support a finding of professional misconduct, we must affirm the district court's summary judgment if we find that no genuine issue of material fact exists regarding Cluck's violation of at least one disciplinary rule and that the Commission was entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c). We review the summary judgment de novo, take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When both parties move for summary judgment on the same issue and when the trial court grants one motion and denies the other, we review the evidence presented, determine the questions presented, and render the judgment the trial court should have rendered if we determine that it erred. *Id.*

We first address the trial court's finding that Cluck violated rule 1.14(a) by failing to hold the $20,000 paid by Smith in a trust account. *See* Tex. Disciplinary R. Prof'l Conduct

5

1.14(a) ("A lawyer shall hold funds . . . belonging in whole or in part to clients . . . . in a separate account, designated as a 'trust' or 'escrow' account . . . ."). Cluck argues that the fee paid by Smith was a nonrefundable retainer that was earned at the time it was received and that he was not obligated to hold the funds in a trust account because they did not belong in whole or in part to Smith. The Commission argues that, despite the contractual language, the fee was neither nonrefundable nor a retainer but was instead an advance fee that should have been held in a trust account.

An opinion by the Texas Committee on Professional Ethics discusses the difference between a retainer and an advance fee. *See* Tex. Comm. on Prof'l Ethics, Op. 431, 49 Tex. B.J. 1084 (1986). The opinion explains that a true retainer "is not a payment for services. It is an advance fee to secure a lawyer's services, and remunerate him for loss of the opportunity to accept other employment." *Id.* The opinion goes on to state that "[i]f the lawyer can substantiate that other employment will probably be lost by obligating himself to represent the client, then the retainer fee should be deemed earned at the moment it is received." *Id.* If a fee is not paid to secure the lawyer's availability and to compensate him for lost opportunities, then it is a prepayment for services and not a true retainer. *Id.* "A fee is not earned simply because it is designated as non-refundable. If the (true) retainer is not excessive, it will be deemed earned at the time it is received, and may be deposited in the attorney's account." *Id.* However, money that constitutes the prepayment of a fee belongs to the client until the services are rendered and must be held in a trust account. Tex. Disciplinary R. Prof'l Conduct 1.14 cmt. 2.

6

We are convinced that no genuine issue of material fact exists regarding whether the fees charged by Cluck were true retainers and, thus, whether Cluck was obligated to hold the funds in a trust account. First, the contract for legal services does not state that the $15,000 payment compensated Cluck for his availability or lost opportunities; instead, it states that Cluck's hourly fee will be billed against it. Second, the $5,000 additional payment requested by Cluck in 2002 makes clear that the $15,000 paid in 2001 did not constitute a true retainer; as the trial court noted in its judgment, "if the first $15,000 secured [Cluck]'s availability, it follows that he should not charge another 'retainer' to resume work on the divorce. He was already 'retained' for the purposes of representing Smith in the matter."

Finally, Cluck concedes in his brief that the fees did not represent a true retainer. However, he argues that he did not violate any disciplinary rules by depositing the money in his operating account because the contract states that the fees are nonrefundable. We disagree. "A fee is not earned simply because it is designated as non-refundable." Tex. Comm. on Prof'l Ethics, Op. 431, 49 Tex. B.J. 1084 (1986). Advance fee payments must be held in a trust account until they are earned. Tex. Disciplinary R. Prof'l Conduct 1.14 cmt. 2 (providing that trust account must be utilized "[w]hen a lawyer receives from a client monies that constitute a prepayment of a fee and that belongs to the client until the services are rendered" and that "[a]fter advising the client that the service has been rendered and the fee earned, and in the absence of a dispute, the lawyer may withdraw the fund from the separate account"); Tex. Comm. on Prof'l Ethics, Op. 431, 49 Tex. B.J. 1084 (1986); *see also* Tex. Disciplinary R. Prof'l Conduct 1.15(d) ("Upon termination of

7

representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payments of fee that has not been earned.").

Cluck violated rule 1.14(a) because he deposited an advance fee payment, which belonged, at least in part, to Smith, directly into his operating account. Accordingly, we must affirm the trial court's summary judgment holding that Cluck committed professional misconduct because he violated a disciplinary rule. Because Cluck's other points of error address alternate grounds for the trial court's holding that Cluck committed professional misconduct and because we have already upheld the summary judgment on one ground raised by the trial court, we do not reach his other arguments.

## CONCLUSION

Having held that no genuine issue of material fact exists regarding whether Cluck committed professional misconduct, we affirm the district court's summary judgment.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   January 19, 2007

8