290 S.W.3d 929 (2009)
In the Interest of C.H.C. and S.M.C., Children.
No. 05-08-00233-CV.
Court of Appeals of Texas, Dallas.
July 2, 2009.
*930 Byron Kevin Henry, Cowles & Thompson, PC, Dallas, TX, for Appellant.
F. Colin Durham, Jr., Craig A. Bernstein, Pat W. Davis, Attorney and Counselor At Law, Dallas, TX, Howard Shapiro, The Shapiro Law Firm, Plano, TX, for Appellee.
Before RICHTER, LANG, and MURPHY.

OPINION
Opinion By Justice RICHTER.
In a single issue, Jennifer Cary contends the trial court abused its discretion by dissolving a turnover order requiring Howard Shapiro, David Cary's attorney, to pay funds in Shapiro's possession to Jennifer.[1] We affirm the trial court's order.

Background
As part of Jennifer's efforts to collect over $400,000 in judgments against her ex-husband, David, she subpoenaed records from Shapiro which showed Shapiro received a retainer of $15,000 to represent David. Jennifer obtained an ex parte turnover order requiring Shapiro to turn over "all funds (IOLTA account funds) held in trust by Howard Shapiro and/or The Shapiro Firm for the benefit of and/or on behalf of [David], specifically including, but not limited to $12,798.50," representing the balance remaining of the $15,000 retainer. David filed a motion to dissolve the order. Stacy Stine Cary, David's wife, filed a plea in intervention also requesting the order be dissolved.
The testimony at the hearing on the motions to dissolve focused on the written fee agreement between David and Shapiro. The agreement required a minimum fee of $15,000 and states: "I [David] understand and agree that should this matter be dismissed or settled in any other manner other than by contested trial, no part of the attorney's fee is to be refunded to me...." (emphasis in original). The fee agreement lists seven factors used in determining the fee, including the possible preclusion of other employment by Shapiro.
Israel Suster, Jennifer's attorney, testified he had practiced commercial and property litigation, including the collection of judgments, for eighteen years. Suster *931 acknowledged the contract between Shapiro and David provided for a $15,000 non-refundable retainer. Suster believed, however, the retainer was actually an advance payment of fees and that Shapiro's billing statement showed $12,798.50 of the fee was still unearned.
Stacy testified she intervened seeking to have the turnover order dissolved because Suster and Jennifer were "trying to seize my money, my personal property, claiming that it's David's when it's not, it's mine." She hired Shapiro to represent David and paid Shapiro the $15,000 retainer from her separate property. At the time she paid the retainer, there were no "active pleadings" against David. Stacy understood the retainer was non-refundable. If any of the funds were refunded, however, they would be refunded to her. Stacy testified David did not have any right to possession of or control over the funds.
Shapiro testified he represented David in a contempt action and had a fee agreement with David. The fee agreement provides the initial fee is non-refundable, but any fees incurred above the $15,000 retainer would be billed at $400 per hour. He deposited the $15,000 retainer in his operating account, not his trust account.
The trial court vacated the turnover order. In its findings of fact and conclusions of law, the trial court found the funds paid to Shapiro were never owned by David and were never in David's possession or subject to his control. The trial court also concluded the turnover statute's requirement that David own or have owned or controlled the property subject to the turnover order was not established by a preponderance of the credible evidence.

Standard of Review
We review the granting or denial of a turnover order for abuse of discretion. Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex.1991); Pillitteri v. Brown, 165 S.W.3d 715, 721 (Tex.App.-Dallas 2004, no pet.) (op. on reh'g). We may reverse the trial court for abusing its discretion only if it acted in an unreasonable or arbitrary manner or acted without reference to any guiding rules or principles. Buller, 806 S.W.2d at 226; Pillitteri, 165 S.W.3d at 721. A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. Tanner v. McCarthy, 274 S.W.3d 311, 321-22 (Tex. App.-Houston [1st Dist.] 2008, no pet.); Jones v. Am. Airlines, Inc., 131 S.W.3d 261, 266 (Tex.App.-Fort Worth 2004, no pet.).

Discussion
Section 31.002 of the civil practice and remedies code provides a method for court-ordered collection of judgments. Pillitteri, 165 S.W.3d at 721. The trial court may order a judgment debtor to turn over nonexempt property that cannot readily be attached or levied on by ordinary legal process. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) (Vernon 2008); Pillitteri, 165 S.W.3d at 721. The turnover statute applies to property within the judgment debtor's possession or subject to his control. TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(b)(1). The judgment creditor bears the burden of tracing the assets to the judgment debtor. Buller, 806 S.W.2d at 226; Pillitteri, 165 S.W.3d at 722. The judgment debtor must show the property is exempt from execution. Burns v. Miller, Hiersche, Martens & Hayward, P.C., 948 S.W.2d 317, 324 (Tex.App.-Dallas 1997, writ denied).
Relying on Cluck v. Commission for Lawyer Discipline, 214 S.W.3d 736 *932 (Tex.App.Austin 2007, no pet.), Jennifer contends the retainer paid to Shapiro was not a retainer but an advance payment on fees. She further asserts the unearned portion of the fees belonged to neither Shapiro nor Stacy and, because David was Shapiro's client, remained under David's control as a matter of law.
Cluck involved a disciplinary action brought by the State Bar of Texas Commission for Lawyer Discipline against an attorney based on a complaint filed by the attorney's client. The Commission contended Cluck committed professional misconduct by, in part, failing to deposit client funds in a trust account.[2] Cluck argued the fee paid by the client was a non-refundable retainer that was earned at the time it was received and, therefore, he was not required to deposit the funds in a trust account. The trial court granted summary judgment for the Commission.
The Austin Court of Appeals discussed the differences between a non-refundable retainer and an advance fee:
[A] true retainer "is not a payment for services. It is an advance fee to secure a lawyer's services, and remunerate him for loss of the opportunity to accept other employment." ... "[I]f the lawyer can substantiate that other employment will probably be lost by obligating himself to represent the client, then the retainer fee should be deemed earned at the moment it is received." If a fee is not paid to secure the lawyer's availability and to compensate him for lost opportunities, then it is a prepayment for services and not a true retainer. "A fee is not earned simply because it is designated non-refundable. If the (true) retainer is not excessive, it will be deemed earned at the time it is received, and may be deposited in the attorney's account." However, money that constitutes the prepayment of a fee belongs to the client until the services are rendered and must be held in a trust account.
Id. at 739-40 (citing Tex. Comm. on Prof'l Ethics, Op. 431, 49 Tex. B.J. 1084 (1986)) (citations omitted). The court affirmed the summary judgment for the Commission because there was no issue of material fact that the funds Cluck received were not a true retainer and, therefore, should have been held in Cluck's trust account. In reaching this conclusion, the court noted the contract for legal services did not state the retainer compensated Cluck for his availability or lost opportunities; the contract stated Cluck's hourly fee would be billed against the retainer; Cluck requested an additional payment after the retainer, demonstrating the first payment was not a true retainer; and Cluck conceded in his brief on appeal that the payment did not represent a true retainer. Id. at 740.
While Cluck recognizes the differences between a true or non-refundable retainer and an advance payment of fees, it does not support Jennifer's argument that the funds paid to Shapiro were under David's control as a matter of law. In Cluck there *933 was no material issue of fact that the funds were an advance payment of fees. Here, the trial court heard conflicting evidence regarding the fee agreement and the ownership and control of the funds paid to Shapiro. Suster testified that in his opinion the funds were an advance payment on fees. The fee agreement stated the payment was a non-refundable retainer and that one purpose of the retainer was to compensate Shapiro for lost opportunities. Shapiro testified the fee was a non-refundable retainer and he placed it into his operating account. Stacy testified it was her understanding the $15,000 fee was non-refundable, but that if any money was refunded, it would be refunded to her. She further testified David did not own the funds and had no right to possess or control the funds.
The trial court determined David did not own the funds paid to Shapiro and did not have possession or control over the funds. Because there was substantive and competent evidence to support this finding, we conclude the trial court did not abuse its discretion in vacating the turnover order. We affirm the trial court's dissolution of the turnover order.
NOTES
[1] The trial court also dissolved an order requiring a bank to turn over funds to Jennifer. Jennifer has not challenged that ruling on appeal.
[2] Rule 1.14(a) of the rules or professional conduct provides:

A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property. Such funds shall be kept in a separate account, designated as a "trust" or "escrow" account, maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person.
TEX.R. DISCIPLINARY P. 1.14(a), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A-1 (Vernon 2005).