**CONDITIONALLY GRANT; and Opinion Filed August 27, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00547-CV

## IN RE STEVEN K. TOPLETZ AND HARPER BATES & CHAMPION LLP, Relators

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-02273-2019**

## MEMORANDUM OPINION

Before Justices Brown, Schenck, and Reichek
Opinion by Justice Brown

In this original proceeding, relators Stephen K. Topletz and Harper Bates & Champion LLP (HBC) seek relief from a turnover order requiring them to (1) deposit into the trial court's registry unearned funds in HBC's Interest on Lawyers Trust Accounts (IOLTA accounts) "owned by and/or for the benefit of" Topletz and "accounts receivable, present or future, earned or unearned fees" due from Topletz and (2) produce billing statements, invoices, and other documents reflecting fee agreements, payments, and accounting related to HBC's representation of Topletz. We requested real party in interest Raygan Bryce Wadle, Independent Administrator of the Estate of Lynda Carroll Willis, Deceased, Individually and on Behalf of Lancaster Bluegrove L.P., (the Estate) and respondent file their responses, if any, to relators' petition for writ of mandamus. The Estate filed a response, and relators filed a reply. After reviewing the petition, the response, the reply, and the sworn record, we conditionally grant the writ of mandamus.

BACKGROUND

Following a June 2015 bench trial, the trial court entered a judgment against Topletz in favor of Willis, individually and on behalf of Lancaster Bluegrove, L.P. The Estate[1] served Topletz with post-judgment discovery, which included requests for production seeking attorney fee agreements, checks or drafts paid to attorneys, and attorney billing statements. Topletz provided information about payments to attorneys, but also objected that responsive documents were privileged. The Estate filed a motion to compel, and, in June 2018, the trial court entered an order requiring Topletz to submit in camera and produce certain documents related to the Steven Topletz 2011 Family Trust (the trust).[2] The order did not address production of documents related to attorney fee agreements, payments or billing statements.

The Estate subsequently filed a motion for contempt and, following a February 2019 hearing, the trial court ordered Topletz to produce responsive documents by March 11, 2019 and appear at a show cause hearing on March 18, 2019. The Estate then served Topletz's attorney, Austin Champion of HBC, with a subpoena duces tecum to appear at the March 18 hearing and produce documents, including fee agreements, billing statements, invoices, and statements and documents reflecting monies paid by Topletz, or any person on his behalf, into any IOLTA account. Champion and Topletz responded, objecting that the requests sought information outside the limited scope of the contempt motion. They further objected that, to the extent the subpoena duces tecum sought documents within HBC's possession, HBC was withholding responsive documents containing privileged and confidential information and revealing information protected from disclosure by the work-product doctrine.

---

[1] Willis died after rendition of the judgment, and Wadle was appointed to represent the Estate.

[2] Although a copy of the motion to compel is not in the record, based on the trial court's subsequent orders and the rest of the record, the motion appears to have sought only information and/or documents pertaining to the trust.

After the March 18 hearing, the trial court entered a judgment ordering Topletz to be held in contempt of court and confined in the county jail until he served "full and/or proper responses" to the requests seeking documents related to the trust. Although testimony at the hearing was largely confined to issues related to the trust, the Estate's counsel asked Topletz if he had paid attorneys to represent him at the hearing. Topletz testified that he had paid HBC a retainer fee, which he believed was $5000. There also was some discussion about the subpoena duces tecum and, specifically, the fact that the required witness fee had not been tendered, preventing the trial court from enforcing it. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 22.004; TEX. R. CIV. P. 176.8(b).

In April, the Estate filed an application for turnover order in a new proceeding in the trial court. The application sought an ex parte turnover order requiring Topletz, HBC, and any other attorney representing Topletz to deposit into the trial court's registry: (1) all unearned funds on deposit, including IOLTA account funds, owned by and/or for the benefit of Topletz; (2) attorney "accounts receivable, present or future, earned or unearned fees" due from Topletz; and (3) any funds to be paid to such attorneys in the future by Topletz or on his behalf. The application also sought production of documents related to fee agreements, billing statements and invoices regarding work done for Topletz, and statements and documents reflecting monies paid by Topletz, or any person on his behalf, into any IOLTA account.

As evidentiary support for its application, the Estate relied on Topletz's testimony that he paid a $5000 retainer to HBC. According to an affidavit by the Estate's counsel attached to the application, Champion represented at the February contempt hearing that his retainers for taking a case range between $5,000 and $25,000 but did not recall the amount of retainer he received to represent Topletz or the hourly rate he was charging Topletz. The Estate's counsel opined, based on his experience, "funds paid by a client as a retainer are placed in the lawyer's or law firm's IOLTA," the lawyer will bill the time spent against the retainer paid as the lawyer performs work,

and "as this litigation continues, [Topletz's] counsel will receive payments from and/or for the benefit of [Topletz] to continue their representation of [Topletz]."

On May 1, 2019, the trial court entered an ex parte order granting turnover relief. According to the order, the trial court found Topletz "owns, controls and/or is the beneficiary of non-exempt property, including funds maintained in the IOLTA(s) of [his] attorneys (including [HBC] and/or Austin Champion) and funds to be received in the future by [Topletz's] attorneys' accounts receivables due from [Topletz] to his attorneys." The order required Topletz, HBC, and any other attorney representing Topletz to deposit into the trial court's registry all unearned funds paid and/or held in attorney IOLTA accounts owned by and/or for the benefit of Topletz and "accounts receivable, present or future, earned or unearned fees" due from Topletz "in order to satisfy the judgment against" Topletz. The order further required them to file with the trial court, and serve on the Estate, documents reflecting payments made by or on behalf of Topletz, billing statements/invoices for work performed on behalf of Topletz, fee agreements between Topletz and HBC and/or Champion, a list of accounts receivable owed by Topletz, and documents identifying any parties making payments to Topletz or third parties on his behalf. The order required compliance within three days from the date the order was served. The order further provided the parties had thirty days from the date of service to file a motion to vacate establishing why the funds are not subject to turnover relief to satisfy the Estate's judgment.

One week later, HBC and Topletz filed this original proceeding requesting a writ of mandamus ordering the trial court to vacate its turnover order.[3] They contend the trial court abused its discretion in ordering (1) current and future attorneys of a judgment debtor to turn over accounts receivable, IOLTA account funds, and future fees in satisfaction of a judgment and (2) production

---

[3] The Estate's petition also sought, and the trial court order provided for, turnover of funds and documents from two companies controlled or that appear to be controlled by Topletz, January Management, Inc. and Chrystal Management, and Inwood National Bank. Those entities are not parties to this mandamus action; the record does not indicate if they had been served with the trial court's order.

of attorney billing records and other related materials in connection with a turnover order. We stayed the order pending resolution of the issues presented.

STANDARD OF REVIEW

Generally, mandamus relief lies when the trial court has abused its discretion and the relator has no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law" or clearly fails to analyze or apply the law correctly. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam) (quoting *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding)). Whether an appellate remedy is adequate depends heavily on the circumstances presented. *In re Prudential Ins. Co.*, 148 S.W.3d at 136–37. Mandamus review is not justified simply because an appeal would arguably involve more cost or delay than mandamus. *Walker v. Packer*, 827 S.W.2d at 842.

TURNOVER STATUTE

Section 31.002 of the Texas Civil Practice and Remedies Code (the turnover statute) authorizes a trial court to order a judgment debtor to turn over nonexempt property, including present or future rights to property, the judgment debtor owns. *See* CIV. PRAC. & REM. § 31.002(a); *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chemical Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018) (per curiam). As pertinent here, the turnover statute provides:

> (a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.
>
> (b) The court may:
>
> > (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution.

–5–

*See* CIV. PRAC. & REM. § 31.002(a), (b)(1).

"The purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control." *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991). Turnover proceedings are limited to their purely procedural nature, and the turnover statute does not authorize the trial court to determine the substantive rights of non-judgment debtors. *See Alexander Dubose*, 540 S.W.3d at 583; *Beaumont Bank, N.A.*, 806 S.W.2d at 227 ("Texas courts do not apply the turnover statute to non-judgment debtors."). Thus, a "turnover order cannot be used as a shortcut to avoid judicial proceedings necessary to provide third parties due process in adjudicating their substantive rights." *Elgohary v. Herrera Partners, L.P.*, No. 01-13-00193-CV, 2014 WL 2538556, at *4 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.).

In *Alexander Dubose*, a non-judgment debtor intervened in a turnover proceeding to assert its ownership rights to the property at issue. 540 S.W.3d at 579. The supreme court noted conflicting opinions had caused confusion regarding the extent to which a turnover order can affect the rights of non-judgment debtors. *Id.* at 584–85. Because there was no judgment on the intervenor's ownership claims, the supreme court did not reach the "appropriate mechanism for resolving competing substantive claims to property sought in a turnover application." *Id.* at 586. However, the court observed the turnover statute has "no provision conferring authority on trial courts to decide the substantive rights of the parties properly before it in a turnover proceeding, let alone the rights of strangers to the underlying judgment." *Id.* at 585. This Court has concluded a judgment may be enforced against a non-party to the judgment only by bringing a separate suit alleging a basis for enforcing the judgment against that party. *See In re Karlseng*, No. 05-14-00049-CV, 2014 WL 1018321, at *3 (Tex. App.—Dallas Feb. 12, 2014, orig. proceeding) (mem. op.); *Turner Bros. Trucking, L.L.C. v. Baker*, 396 S.W.3d 672, 674–75 (Tex. App.—Dallas 2013, no pet.).

We review a trial court's order in a turnover proceeding for abuse of discretion. *Beaumont Bank, N.A.*, 806 S.W.2d at 226. Lack of evidence to support a turnover order is a relevant consideration in determining whether the trial court abused its discretion in entering the order. *Id.*; *Tanner v. McCarthy*, 274 S.W.3d 311, 321–22 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Although section 31.002 does not specify the manner in which evidence may be received or require evidence to be in any particular form, a trial court must have some evidence before it establishing the necessary conditions for section 31.002 to apply. *Tanner*, 274 S.W.3d at 321–22; *Clayton v. Wisener*, 169 S.W.3d 682, 683–84 (Tex. App.—Tyler 2005, no pet.) (trial court abused its discretion in entering turnover order without any evidence of facts required by section and based only on motion and argument of judgment creditor's counsel).

ATTORNEY/CLIENT AND WORK PRODUCT PRIVILEGES

A trial court generally has discretion to determine the scope of discovery. *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 802 (Tex. 2017) (orig. proceeding). The scope of discovery extends to "any matter that is not privileged and is relevant to the subject matter of the pending action." Tex. R. Civ. P. 192.3. A discovery order compelling "production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 802—03 (internal quotations omitted).

The attorney-client privilege protects communications between attorney and client that are not intended to be disclosed to third parties and made for the purpose of facilitating the rendition of professional legal services. TEX. R. EVID. 503(a)(5), (b)(1). The work product privilege, which is broader than the attorney-client privilege, protects: "(1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives . . .; or (2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys . . .." TEX. R. CIV. P. 192.5(a); *In re Bexar County Crim. Dist. Attorney's Office*, 224 S.W.3d 182, 186 (Tex.

2007) (orig. proceeding). Because billing records constitute "communication[s] made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives" and "represent the mechanical compilation of information that reveals counsel's legal strategy and thought processes," *see* TEX. R. CIV. P. 192.5(c)(2), the supreme court has held a request for all billing invoices, payment logs, payment ledgers, payment summaries, and documents showing flat rates "invade the zone of work-product protection." *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 804, 806. Thus, absent unusual circumstances and outside a scenario where a party puts its attorney fees at issue, such as making a claim for attorney fees, using attorney fees as a comparator in challenging an opponent's fee request, or designating counsel as an expert, information about the party's attorney fees and expenses is privileged or irrelevant and, thus, not discoverable. *Id.* at 816.

### TURNOVER OF FUNDS

Relators contend HBC has a property right to income it earns representing Topletz and the trial court abused its discretion in ordering it to turn over related IOLTA account funds and accounts receivable with just three days' notice and without having been named in a proceeding, served with process, or provided an opportunity to respond or be heard. Because "Texas courts do not apply the turnover statute to non-judgment debtors," *Beaumont Bank, N.A.*, 806 S.W.2d at 227, we agree the trial court abused its discretion in ordering HBC to turn over the funds and accounts receivable. *See, e.g., In re Karlseng*, 2014 WL 1018321, at *3; *Turner Bros. Trucking*, 396 S.W.3d at 674–75.

The Estate acknowledges "there is some question as to the extent the turnover statute can be used to affect the rights of non-judgment debtors," but contends third parties like HBC can be ordered to turn over property if the trial court makes a factual finding the property is subject to the

possession or control of the debtor.[4] Even assuming section 31.002 authorized the trial court to order HBC to turn over property, we conclude there is no substantive and probative evidence to support the trial court's finding that Topletz "owns, controls and/or is the beneficiary of . . . funds maintained in the IOLTA(s) of [his] attorneys (including [HBC] and/or Austin Champion) and funds to be received in the future by [Topletz's] attorneys' accounts receivables due from [Topletz] to his attorneys." *See Tanner*, 274 S.W.3d at 321–22. The evidence before the trial court consisted of Topletz's payment to HBC of a $5000 retainer, a payment by January Management, Inc. of approximately $15,000 for attorneys' fees incurred by Topletz's former law firm, and the Estate's counsel's expert opinion that "[Topletz's] counsel will receive payments from and/or for the benefit of [Topletz] to continue their representation of [Topletz]." The fact that Topletz and another party previously made payments to HBC or that HBC may receive future payments does not constitute evidence that Topletz, as opposed to HBC, now owns or controls the funds paid or will pay or control any payments to HBC in the future.

In any event, *Alexander Dubose* makes clear a trial court has no discretion to determine the substantive rights of a non-judgment debtor in a turnover proceeding. *See* 540 S.W.3d at 583; *Beaumont Bank, N.A.*, 806 S.W.2d at 227. Here, without evidence before it establishing the necessary conditions for section 31.002 to apply, the trial court entered an ex parte order that effectively deprives HBC of a property interest in funds it holds, including compensation it has earned for services it provided to Topletz as well as any such compensation it earns in the future without regard for who pays the compensation. Because the trial court lacked authority to make

---

[4] The Estate directs us to two cases as support for a trial court's authority to order an attorney to turn over IOLTA funds held in trust and accounts receivables. *See In re C.H.C.,* 290 S.W.3d 929 (Tex. App.—Dallas 2009, no pet.) and *Ross v. 3D Tower, Ltd.,* 824 S.W.2d 270 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Neither case applies here. In *In re C.H.C.*, this Court held the trial court did not abuse its discretion in dissolving a turnover order requiring a judgment debtor's attorney to turn over IOLTA account funds held for the benefit of the judgment debtor when, following an evidentiary hearing, the trial court determined the funds sought were not subject to the control or possession of the judgment debtor. 290 S.W.3d at 930. The Court, however, did not consider whether the trial court had authority to enter the turnover order in the first instance. In *Ross*, the trial court ordered an attorney to turn over accounts receivable to satisfy a judgment, but the attorney owning and controlling the accounts receivable was the judgment debtor. 824 S.W.2d at 272. Indeed, *Ross* supports the proposition that an attorney, and not the attorney's client, has ownership, possession, and control over the attorney accounts receivables.

such a determination in a turnover proceeding, it abused its discretion in doing so. *See Alexander Dubose*, 540 S.W.3dd at 585.

TURNOVER OF DOCUMENTS

Relators contend the trial court also abused its discretion in ordering them to file and serve billing statements, invoices, and other documents reflecting fee agreements, payments, and accounting related to HBC's representation of Topletz. Relying on *In re National Lloyds Ins. Co.*, relators maintain the documents are privileged. *See* 532 S.W.3d at 816. Relators also assert the Estate is improperly using the turnover proceeding as an end run to obtain documents that it previously requested, and to which both Topletz and Champion objected, without obtaining a ruling on the objections or moving to compel. The Estate distinguishes *In re National Lloyds Ins. Co.* because it was "a pre-judgment lawsuit in which the complaining party was not seeking its fees in the suit" and, here, the billing and payment records are needed to determine if the funds at issue are subject to turnover.

Under section 31.002(b), a trial court may order a judgment debtor to turn over "all documents or records related to a property" subject to the turnover order to "a designated sheriff or constable for execution." *See* CIV. PRAC. & REM. § 31.002(b)(1). Nothing in the statute authorizes the trial court to use the turnover statute to compel a party or non-judgment debtor to produce documents sought in discovery by the judgment creditor. Further, the trial court's order compelling en masse production of HBC billing records invaded the work-product privilege. *See, e.g., In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 816. The Estate's rationale that the documents are necessary to determine if the funds at issue are subject to turnover is unavailing. As discussed above, the trial lacked authority in this turnover proceeding to determine who, as between Topletz and non-judgment debtor HBC, owned those funds. *See, e.g., Alexander Dubose*, 540 S.W.3d at 583; *Beaumont Bank, N.A.*, 806 S.W.2d at 227. Accordingly, we conclude this turnover proceeding does not constitute a scenario or present circumstances in which the privileged

–10–

documents regarding a party's attorney fees and expenses are discoverable.[5] The trial court abused its discretion in requiring HBC and Topletz to file and serve the documents. *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 816.

NO ADEQUATE REMEDY BY APPEAL

Relators contend they have no adequate remedy by ordinary appeal because (1) the trial court's turnover order is not final and appealable; (2) the order requiring a third party to turn over property is not capable of direct appeal; (3) by withholding attorney compensation, the order effectively prevented Topletz from proceeding with any appeal; and (4) an order requiring production of privileged documents lacks adequate remedy by appeal.

Because the trial court's order requires HBC and Topletz to deposit property into the trial court's registry, it is not final and appealable. *See Alexander Dubose*, 540 S.W.3d at 588. However, mandamus may be an appropriate remedy for a non-judgment debtor to attack an improvidently granted turnover order. *See In re Karlseng*, 2014 WL 1018321, at *2.

The Estate asserts mandamus relief is premature because HBC and Topletz did not first challenge the order in the trial court. According to the Estate, the trial court's order "merely ordered funds to be paid to the court's registry for the protection of the funds and ordered documents to clarify the nature of such funds to be filed with the court and served on the parties." Thus, according to the Estate, the order contemplates a hearing to determine "ownership or control" over the funds and whether the Estate is entitled to recover the funds.

We disagree. The order explicitly required HBC and Topletz to turn over the funds "in order to satisfy the judgment rendered against" Topletz. The order made no reference to a subsequent hearing to determine the disposition of the funds. At most, it provided an aggrieved

---

[5] The Estate also contends the turnover order adequately protected disclosure of privileged information because it provided that the responsive documents could be redacted. In *In re National Lloyds Ins. Co.*, however, the supreme court held redacting privileged information from attorney billing records is insufficient as a matter of law to mask attorney thought processes and strategies. *See* 532 S.W.3d at 806, 816.

We note the Estate is not precluded from seeking responses from Topletz to post-judgment discovery seeking more narrowly tailored requests for information or documents regarding payments to Topletz's attorneys that is relevant to the Estate's collection efforts and does not invade the attorney's strategic decisions or thought processes. *See id*. Indeed, Topletz already has provided related information and documents.

–11–

party, within thirty days from the date of service, could file a motion to vacate the order establishing why the funds are not subject to turnover relief to satisfy the judgment. The Estate, however, had the burden of presenting evidence showing Topletz owned the funds. *See Beaumont Bank, N.A.*, 806 S.W.2d at 226; *Pillitteri v. Brown*, 165 S.W.3d 715, 722–23 (Tex. App.–Dallas 2004, Aug. 3, 2016, no pet.) (burden shifts to judgment debtor to account for assets if judgment creditor traces assets to debtor). Thus, the trial court's order impermissibly shifted to relators the burden of proving who, as between HBC and Topletz, owns the funds. Without an opportunity to be heard, HBC and Topletz were required to deposit funds in which HBC claims an ownership interest into the trial court's registry within three days, which was most certainly insufficient time to file a motion to vacate and obtain a hearing on the motion. Further, the order's requirement that HBC and Topletz turn over all fees due for legal service provided to Topletz would substantially hinder HBC's ability to provide, and Topletz from receiving, adequate legal representation to challenge the order or in any other proceeding.

The extraordinary writ of mandamus "is justified only when parties stand to lose their substantial rights." *Walker*, 827 S.W.2d at 842 (quoting *Iley v. Hughes*, 311 S.W.2d 648, 652 (Tex. 1958) (orig. proceeding)). Whether an appellate remedy is adequate depends heavily on the circumstances presented. *In re Prudential*, 148 S.W.3d at 136—37. Under these circumstances, we conclude mandamus relief is appropriate to protect HBC and Topletz from the trial court's ex parte order, which deprived them of the opportunity to assert their substantive rights to the funds subject to turnover without an adequate remedy by appeal.

Likewise, a relator does not have an adequate remedy by appeal when the trial court erroneously orders the production of privileged documents. *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d at 802—03; *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex.2005). Thus, mandamus relief also is appropriate to protect disclosure of HBC documents reflecting payments made by or on behalf of Topletz, billing statements/invoices for work performed on behalf of

–12–

Topletz, fee agreements between Topletz and HBC and/or Champion, a list of accounts receivable owed by Topletz, and documents identifying any parties making payments to Topletz or third parties on his behalf.

Accordingly, we conditionally grant the relators' petition for writ of mandamus. A writ will issue only in the event the trial court fails to vacate those portions of its May 1, 2019 order granting turnover relief that require (1) Topletz, HBC, and/or any other attorney representing Topletz to deposit into the trial court's registry all unearned funds paid and/or held in attorney IOLTA accounts owned by and/or for the benefit of Topletz and "accounts receivable, present or future, earned or unearned fees" due from Topletz in order to satisfy the judgment against Topletz; (2) Topletz, HBC, and/or any other attorney representing Topletz file with the trial court, and serve on the Estate, documents reflecting payments made by or on behalf of Topletz, billing statements/invoices for work performed on behalf of Topletz, fee agreements between Topletz and HBC and/or Champion, a list of accounts receivable owed by Topletz, and documents identifying any parties making payments to Topletz or third parties on his behalf; and (3) Topletz to pay attorney fees to the Estate.

/Ada Brown/
ADA BROWN
JUSTICE

190547F.P05