Affirmed
and Opinion filed September 10, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00526-CV

____________

 

GEORGE R. NEELY, Appellant

 

V.

 

COMMISSION FOR LAWYER DISCIPLINE, Appellee

 



 

On Appeal from the 164th
District Court

Harris County, Texas

Trial Court Cause No. 2003-63182

 



 

O P I N I O N

This appeal arises from an attorney
disciplinary proceeding in which the trial court granted summary judgment on
claims that the attorney violated Texas Disciplinary Rule of Professional
Conduct 1.14(a), governing the safekeeping of others= property.  The
trial court entered a final judgment of disbarment.  In nine appellate issues,
the disbarred attorney challenges the trial court=s jurisdiction as
well as the trial court=s granting of summary judgment, the
admission of certain evidence, and various other aspects of the judgment.  We
affirm.








I.  Factual and Procedural Background

Appellant George R. Neely was licensed to
practice law in Texas.  He maintained a trust account under the Interest on
Lawyers Trust Account (IOLTA) program.  Appellee the Commission for Lawyer
Discipline (the ACommission@) initiated a
disciplinary action against Neely for violation of the Texas Disciplinary Rules
of Professional Conduct.  In its live petition, the Commission alleged that
Neely violated the trust account provisions set forth in Rule 1.14(a) by
commingling his own funds with clients= funds in his
IOLTA trust account (ATrust Account@), by paying
employee wages and other business and personal expenses from the same account,
and by failing to preserve five years of records on the Trust Account. 

The action stemmed from a grievance filed
with the State Bar of Texas by Neely=s former employee,
Virginia Ploch.  In her grievance, Ploch accused Neely of paying her wages and
bonuses, Neely=s office expenses, and Neely=s household
expenses from the Trust Account, which Ploch claimed was the same account in
which Neely deposited clients= money.  Ploch attached to the grievance
copies of payroll checks and other checks written to Ploch and signed by Neely
from the Trust Account (hereinafter the APloch Checks@), which Neely
asserts Ploch stole from his office.

In the course of discovery, on January 12,
2004, the Commission requested production of all records of any trust accounts
maintained by Neely for the period beginning December 1, 1998, and running
through January 12, 2004, including statements and cancelled checks, among
other things.  Neely objected to the Commission=s request,
asserting attorney-client privilege and a number of other objections; Neely did
not produce the requested documents.  The Commission indicated that it would
file a motion to compel production of the records if Neely did not comply with
the request for production.








Shortly thereafter, on February 20, 2004,
the Commission served a subpoena on Frost National Bank for records associated
with the Trust Account.  Neither party disputes that Neely did not receive
notice of the Frost National Bank subpoena.[1] 
Frost National Bank complied and provided 1,462 pages of records pertaining to
the Trust Account (hereinafter ATrust Account Records@).[2] 
The Commission filed the Trust Account Records with the trial court on May 28,
2004, along with an affidavit of a Frost National Bank officer and custodian of
records, Lisa Gonzales, under the business-records exception of Texas Rule of
Evidence 902(10).  The notice of filing associated with these records, in
pertinent part, is provided below:

You are hereby notified
that Petitioner, Commission for Lawyer Discipline has filed in the above-styled
and numbered case certain business records of Frost National Bank, with an
affidavit by Lisa Gonzales, Custodian of Records.  These records will be
offered in evidence during the trial of this case.

Pursuant to Rule
902(10)(a) of the Texas Rules of Evidence, these records will be made available
to counsel for parties to the litigation for inspection and copying at the
expense of the person desiring the copies.

A certificate of service to Neely accompanied the
notice.  








In June 2004 and July 2004, the Commission
filed two other motions to compel Neely=s production of
records associated with the Trust Account.  In an order dated April 19, 2007,
the trial court granted the Commission=s motions to
compel, ordering Neely to provide a Afull and complete
response@ to the Commission=s request for
production and interrogatories.  Neely produced some records associated with
the Trust Account.  The record reflects that he admitted producing to the
Commission AIOLTA account records@ for the period of
April 2001 to July 2002.[3] 
Neely provided no other documents pertaining to the Trust Account for the requested
time-period (December 1, 1998, to January 12, 2004).

The Commission moved for partial summary
judgment on the Rule 1.14(a) claims.[4] 
In support of its motion, the Commission submitted the following exhibits: 

$       
excerpts from
the transcript of Neely=s June 2007 deposition, 

$       
copies of the
front and back of cancelled checks signed by Neely and written to Ploch from
the Trust Account for payroll, expenses, and bonuses,[5]


$       
two monthly
financial statements from Neely=s Trust Account Records, dated January 10, 2002, and February 11, 2002,
and copies of the front and back of cancelled checks that are listed within the
two statements,

$       
an affidavit
and spreadsheet (prepared by accountant Tom Prude on behalf of Neely)
pertaining to the Trust Account, and 

$       
several documents
filed with the trial court associated with discovery, including the Commission=s request for production dated
January 12, 2004, the trial court=s April 19, 2007 order on the Commission=s motion to compel, and Neely=s supplemental response to the
Commission=s first request for interrogatories
in which he listed AIOLTA account records@ from April 2001 to July 2002, as
items he produced to the Commission in response to the Commission=s request for production.








According to the Commission=s motion for
partial summary judgment, Neely=s deposition testimony and the other
evidence established the following:  (1) Neely did not separate his clients= funds from his
personal funds within the Trust Account, his only trust account, during 2001
and 2002; (2) Neely acknowledged paying for numerous personal- and
business-related expenses from this same trust account at Frost National Bank;
and (3) Neely failed to preserve five years of records pertaining to the Trust
Account as required by Rule 1.14(a).

In response, Neely objected to the
Commission=s evidence, claiming it was incompetent summary
judgment evidence.  Neely asserted that the Commission presented no evidence to
support the allegations that he violated Rule 1.14(a).  Neely submitted an
affidavit and referred to excerpts from his deposition in an effort to
establish the existence of material fact issues in order to preclude summary
judgment.  Neely argued for the exclusion of the Trust Account Records from the
Commission=s summary-judgment evidence on the grounds that the
Commission failed to comply with the procedural rules in obtaining the Trust
Account Records by subpoena without notice to him.  Neely also argued that the
exclusionary rule applied in this case, referring to the matter as Aquasi-criminal@ in nature, such
that the improperly obtained Trust Account Records and Athe documents and
information contained in the documents stolen@ by Ploch from
Neely=s office could not
be used by the Commission for any purpose. 

At a September 2007 hearing, the trial
court considered the Commission=s motion, but determined that the trial
court first must resolve whether the Trust Account Records or the Ploch Checks
should be excluded from evidence.  The trial court took the Commission=s motion under
advisement and requested additional briefing from the parties regarding whether
the Ploch Checks or the Trust Account Records should be excluded.  

Neely filed a motion to suppress the Trust
Account Records.  Neely also sought to suppress and exclude all other evidence
obtained by the Commission, alleging that the evidence was the Afruit of the
poisonous tree@ stemming from either the Ploch Checks or from the
Trust Account Records.  In addition, Neely moved for sanctions for discovery
abuse on this basis.








The parties reconvened in October 2007,
for the trial court=s consideration of Neely=s motion to
suppress and the Commission=s motion for partial summary judgment. 
The trial court ruled that the exclusionary rule did not apply to a civil
disciplinary proceeding.  The trial court determined that the Texas Finance
Code, upon which the Commission relied in serving the subpoena on Frost
National Bank, was not applicable to the matter.  The trial court opined that
the Commission did not necessarily follow the Aright statute@ in obtaining the
Trust Account Records by subpoena, but that the Commission would have been able
to obtain the records sooner or later in discovery.  In denying Neely=s motion to
suppress and motion for sanctions, the trial court ruled that the Trust Account
Records would not be excluded, concluding that exclusion would not be a fair
sanction.  The trial court granted the Commission=s motion for
summary judgment, finding that the Commission had proved as a matter of law
that Neely violated Rule 1.14(a). 

The Commission submitted evidence for the
trial court=s consideration.  In an effort to give Neely
additional time to gather evidence, the trial court continued the hearing. 
After the continuance, Neely presented evidence and witnesses.  The trial court
ultimately entered a final judgment of disbarment against Neely.

II.  Issues And Analysis

A.      Is the
trial court=s judgment void because the trial
court lacked jurisdiction over the disciplinary proceeding?








In his first issue, Neely challenges the
trial court=s jurisdiction to hear the disciplinary proceeding,
claiming that the judgment is void because the Supreme Court of Texas and the
trial judge did not comply with the procedural requirements set forth in Texas
Rules of Disciplinary Procedure 3.02, 3.03, and 3.07.  According to Neely, the
record contains neither an order removing the original appointed judge, Judge
Evans, nor an order appointing the replacement judge, Judge Robison, nor was
any order filed with the Harris County District Clerk as required in Rule
3.02.  Neely also claims that he was not served with a copy of the order
appointing Judge Robison as required in Rule 3.03.  Finally, Neely complains
that under Rule 3.07, the disciplinary action was not set for trial within 180
days after the petition was filed. 

Under Rule 3.02, entitled AAssignment of
Judge,@ the Supreme Court
of Texas shall appoint a qualified judge or replacement judge to preside in a
disciplinary proceeding.  See Tex.
R. Disciplinary P. 3.02, reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. G app. A-1 (Vernon 2005).  Contrary to
Neely=s assertions, the
record in this case contains an order dated October 18, 2004, in which the
Supreme Court of Texas appointed Judge Robison to preside over the disciplinary
proceeding for cause number 2003-63182, the same trial cause number in the case
at hand.  This order is file-stamped by the Harris County District Clerk. 
Although Neely contends that the record contains no order removing Judge Evans,
Rule 3.02 does not require a removal order in appointing a replacement judge.  See
Tex. R. Disciplinary P. 3.02;
see also Wilson v. State, 582 S.W.2d 484, 487 (Tex. Civ. App.CBeaumont, 1979, no
writ.) (providing that despite the absence of written notation of recusement in
record, procedure to substitute judges in a disciplinary matter was proper).








Rule 3.03, entitled AFiling, Service
and Venue,@ provides that upon the appointment of a judge for a
disciplinary proceeding, the respondent attorney Ashall then be
served@ with a copy of
the Supreme Court=s appointing order.  Tex. R. Disciplinary P. 3.03, reprinted
in Tex. Gov=t Code Ann., tit. 2, subtit.
G app. A-1 (Vernon 2005).  Neely complains that he was not served with an order
of the appointment, and the record does not indicate whether Neely was served
with the order.  Presuming without deciding that Neely was not properly served
under Rule 3.03, any error would be harmless because the record reflects that
Neely knew Judge Robison was to preside over the proceeding.  See Belt v.
Comm=n for Lawyer Discipline, 970 S.W.2d 571,
573B74 (Tex. App.CDallas 1997, no
pet.) (rendering harmless any error in which attorney was not served with order
of appointment under Rule 3.03 because a letter in record reflected that the
attorney was notified of the trial setting and the judge=s appointment). 
The record contains a letter dated December 27, 2006, from Neely to Judge
Robison.  In the letter, Neely indicated he would be handling the matter before
Judge Robison and requested a trial setting in August 2007.  See id.  Neely
does not claim that he lacked actual notice of the appointment.  See id.  Therefore,
Neely=s arguments under
Rule 3.03 are without merit.  See id. (overruling a claim that a trial
court lacked jurisdiction over a disciplinary proceeding for failure to abide
by Rules 3.02 and 3.03).

Likewise, Neely=s argument under
Texas Rule of Disciplinary Procedure 3.07, entitled ATrial Setting,@ lacks merit. 
Even if we accept Neely=s contention as true, Rule 3.07 is not
mandatory in nature; rather, Rule 3.07 is directory.  See Tex. R. Disciplinary P. 15.05, reprinted
in Tex. Gov=t Code Ann., tit. 2, subtit.
G app. A-1 (Vernon 2005); Santos v. Comm=n for Lawyer
Discipline, 140 S.W.3d 397, 402 (Tex. App.CHouston [14th
Dist.] 2004, no pet.); Risker v. Comm=n for Lawyer
Discipline, 94 S.W.3d 625, 630 (Tex. App.CHouston [14th
Dist.] 2002, pet. denied).  Failure to comply with the time period set forth in
Rule 3.07 does not result in the invalidation of an act or event by reason of
noncompliance.  See Tex. R.
Disciplinary P. 15.05; Risker, 94 S.W.3d at 630.  Furthermore,
failure to comply with Rule 3.07 does not mandate reversal of the judgment,
particularly in the absence of an objection in the trial court by Neely on Rule
3.07 grounds.  See Risker, 94 S.W.3d at 630.  Therefore, noncompliance
with Rule 3.07 does not invalidate a trial court=s jurisdiction.  See
Tex. R. Disciplinary P.
15.05; Favaloro v. Comm=n for Lawyer
Discipline, 13 S.W.3d 831, 836 (Tex. App.CDallas 2000, no
pet.).  Accordingly, we overrule Neely=s first issue.[6]

 

 








B.      Did the
trial court err in granting the Commission=s motion for partial summary
judgment?

In issues two through five, Neely contends
that summary judgment was improper based on the evidence.  In support of his
arguments, Neely complains that the Ploch Checks and Trust Account Records
should have been excluded.  Neely asserts that the evidence submitted to the
trial court demonstrated that genuine issues of material fact remained so that
summary judgment was improper.

1.       Evidentiary Complaints

In issues two and five, Neely complains
that the trial court should have excluded the Ploch Checks and the Trust
Account Records.  Neely also asserts, as part of his third issue, that the
trial court committed error in granting the summary judgment over his
objections to the Commission=s summary judgment evidence.

A decision to admit or exclude evidence
rests within the sound discretion of the trial court.  K-Mart Corp. v.
Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam); McIntyre v. Comm=n for Lawyer
Discipline, 247 S.W.3d 434, 442 (Tex. App.CDallas 2008, pet.
denied).  A trial court abuses its discretion when a decision is arbitrary,
unreasonable, or without reference to guiding principles.  See Carpenter v.
Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 687 (Tex. 2002); Honeycutt,
24 S.W.3d at 360.  A reviewing court must uphold the trial court=s evidentiary
ruling if there is any legitimate basis for the ruling and will not disturb the
trial court=s ruling absent an abuse of discretion.  Anglo-Dutch
Petroleum Int=l, Inc. v. Greenberg Peden, P.C., 267 S.W.3d 454,
465 (Tex. App.CHouston [14th Dist.] 2008, pet. filed).  Moreover, a
reviewing court will not reverse a trial court for an erroneous evidentiary ruling
unless the error probably caused rendition of an improper judgment.  See
Tex. R. App. P. 44.1; Wal-Mart
Stores, Inc. v. Johnson, 106 S.W.3d 718, 723 (Tex. 2003); McIntyre,
247 S.W.3d at 442.

 








The Ploch Checks

In his second issue, Neely complains that
the trial court erred in admitting the Ploch Checks as Astolen evidence.@  He claims that
the manner in which Ploch obtained the checks, the documents the Commission
used to commence this suit against him, created a genuine issue of material
fact precluding summary judgment.  Presuming, without deciding, that Ploch
stole the Ploch Checks from Neely=s office, as Neely
contends, the copies of checks that Ploch gave to the Commission with her
grievance were not the same documents included in the Commission=s summary judgment
evidence.  








At the September 2007 hearing, the
Commission indicated that it obtained from the Trust Account Records at Frost
National Bank copies of cancelled checks that Neely wrote to Ploch.  The
Commission attached these documents to the summary-judgment motion.  These
documents show the front and back of the cancelled checks.  Because the checks
related only to Ploch, the Commission separated these checks from the other
summary-judgment evidence.  The record reflects that the copies of checks
attached to the Commission=s summary-judgment motion were not the
same copies of checks attached to Ploch=s initial
grievance with the State Bar of Texas.[7] 
The trial court indicated at the September 2007 hearing that the Commission, in
moving for summary judgment, had not submitted evidence from Ploch nor had the
Commission relied on any evidence that appeared to have been stolen from Neely=s office.  Neely
has provided no legal authority in support of this issue, and Neely=s arguments for
exclusion lack merit because the checks of which he complains were not part of
the evidence upon which the trial court granted summary judgment.[8] 
See Risker, 94 S.W.3d at 635 (overruling a party=s objection to the
admission of evidence because the party failed to demonstrate that the
admission of the evidence probably caused the rendition of an improper
judgment).  Therefore, we overrule Neely=s second issue.

The Trust Account Records

Under his fifth issue, Neely complains
that the trial court should not have considered the Trust Account Records
because these records are protected by Neely=s attorney-client
privilege and a constitutional privacy interest.  Neely also contends that the
trial court should not have considered the Trust Account Records because the
Commission improperly obtained them from Frost National Bank by subpoena
without notice to him.  

We first address Neely=s preservation of
error in the trial court regarding these complaints.  The record does not
contain a ruling by the trial court on the summary-judgment objections in which
Neely asserted these complaints.  Therefore, Neely has waived these
summary-judgment objections.  See Dolcefino v. Randolph, 19 S.W.3d 906,
925 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (involving a
party who failed to secure a ruling on his hearsay objections to summary
judgment evidence).  However, Neely did assert these objections in response to
the Commission=s motion to compel production of the documents.  The
trial court overruled these discovery objections and compelled production.  In
response, Neely produced the Trust Account Records.  Therefore, Neely preserved
error as to these complaints, and, accordingly, we review whether the trial
court abused its discretion in overruling these objections and compelling
production.  See Johnson v. Davis, 178 S.W.3d 230, 242 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied) (providing that a trial court=s ruling on
discovery is reviewed under an abuse-of-discretion standard).








Neely objected to production of these
records, claiming it would violate a purported constitutional right to privacy
that Neely claimed in these records.  However, there are no constitutional
rights to privacy affected by disclosure of banking records or in personal
financial records.  See United States v. Miller, 425 U.S. 435, 442, 96
S. Ct. 1619, 1624, 48 L. Ed. 2d 71 (1976) (involving subpoena of bank records
served on a third-party); In re Manion, No. 07-08-00318-CV, 2008 WL
4180294, at *2 (Tex. App.CAmarillo Sept. 11, 2008, no pet.); see
also State v. Hardy, 963 S.W.2d 516, 524 (Tex. Crim. App. 1997) (op. on reh=g) (providing that
a person has no reasonable expectation to privacy in personal information
entrusted to a third-party and likening no expectation of privacy in medical
information in that matter to having no expectation of privacy in bank records
as in Miller); Miller v. O=Neill, 775 S.W.2d 56,
59 (Tex. App.CHouston [1st Dist.] 1989, no writ) (providing that
despite inevitable intrusion, discovery of financial records is permitted and
is not an invasion of privacy).  Financial statements and deposit slips contain
information that is voluntarily conveyed to banks and exposed to bank employees
in the ordinary course of business.  Miller, 425 U.S. at 442, 96 S. Ct.
at 1624.  Likewise, checks are not confidential communications, but rather
negotiable instruments used in commercial transactions.  Id.  Therefore,
the trial court did not abuse its discretion in overruling this discovery
objection.[9]

The attorney-client privilege shields Aconfidential
communications made for the purpose of facilitating the rendition of
professional legal services to the client.@  Tex. R. Evid. 503(b)(1).  The Trust
Account Records do not contain any confidential attorney-client communications.
 See id.; Kelly v. Gaines, 181 S.W.3d 394, 419 (Tex. App.CWaco 2006), reversed
on other grounds, 235 S.W.3d 179 (Tex. 2007) (determining that no
attorney-client privilege applies to financial information).  Therefore, the
trial court did not abuse its discretion in overruling Neely=s discovery
objection based on the attorney-client privilege. 








Neely also objected to discovery on the
ground that the Commission previously had obtained the Trust Account Records in
an improper mannerCby subpoena without notice to him.  Neely
objected and asserted that the trial court should have denied discovery of the
Trust Account Records as a sanction for discovery abuse because the Commission
failed to abide by procedural rules in obtaining the records.  The Commission
acknowledged at the September 2007 hearing that it did not send Neely notice of
the subpoena.  For purposes of our analysis, we presume without deciding that
the Commission should have sent Neely notice of the subpoena and failed to do
so. 

Neely cites Texas Rule of Civil Procedure
21b, entitled ASanctions for Failure to Serve or Deliver Copy of
Pleadings and Motions,@ as operating to exclude the Trust Account
Records as a sanction for the Commission=s failure to
provide notice of the subpoena.  Rule 21b provides that Aif any party fails
to serve on or deliver to the other parties a copy of any pleading, plea,
motion, or other application to the court for an order in accordance with Rule
21 and 21a, the Court may in its discretion, after notice and hearing, impose
an appropriate sanction available under Rule 215.2(b).@  Tex. R. Civ. P. 21b.  Rule 21b is not
applicable on these facts because the Commission=s subpoena is not
a pleading, plea, or motion, nor is the subpoena an Aapplication to the
court for an order.@  See id.  








For the same reason, we find no merit in
Neely=s arguments for
exclusion as a sanction under Texas Rules of Civil Procedure 215.2, governing
sanctions for failure to comply with an order or discovery request, and 215.5,
governing sanctions for failure of a party to attend or to serve a subpoena. 
Neely argues that by application of Rule 21b, the Trust Account Records should
be excluded under Rule 215.2(b)(4) as a sanction.  Rule 215.2(b), entitled ASanctions by Court
in which Action is Pending,@ provides that A[i]f a party . . .
fails to comply with proper discovery requests or to obey an order to provide
or permit discovery . . ., the court . . . may, after notice and hearing, make
such orders in regard to the failure as are just . . . .@  Tex. R. Civ. P. 215.2(b).  Subsection
(4) specifically authorizes a trial court to enter an order refusing to allow a
disobedient party to support a designated claim or prohibiting a party from
introducing certain matters into evidence.  See Tex. R. Civ. P. 215.2(b)(4).  This rule, however, is
inapplicable on these facts because the Commission=s conduct, in
obtaining the Trust Account Records by subpoena without notice, is not a
failure to comply with any discovery request or a failure Ato obey an order
to provide or permit discovery@ as contemplated by Rule 215.2(b), and
Neely has not explained in what manner the Commission=s conduct could be
construed as such.  See id. 

Similarly, Neely cites Rule 215.5 as
warranting the sole sanction of mandatory exclusion of evidence for failure to
provide complete responses to discovery requests.  Rule 215.5, as cited by
Neely, is not applicable because that provision involves failure to give notice
of taking an oral deposition.  See Tex.
R. Civ. P. 215.5.  Neely cites F&H Invs. Inc. v. State, 55
S.W.3d 663 (Tex. App.CWaco 2001, no pet.), for support that
mandatory exclusion is required in this case; however, that case is not
applicable to these facts because it involved exclusion of evidence for a party=s failure to
respond to a discovery request under Rule 193.6.  See id. at 668 (analyzing
facts under Rule 193.6, for failure to respond or supplement a discovery
response, and not under Rule 215 for sanctions of discovery abuse).  The
conduct at issue is not a failure to respond to a discovery request, and Neely
has not explained in what manner the conduct would qualify as such.  For the
same reason, the other cases,[10]
as cited by Neely, are also inapplicable on these facts. 








Neely argues that Adeath penalty@ sanctions for the
Commission=s conduct were warranted.  A trial court=s imposition of an
available sanction is left to the sound discretion of the trial court, not to
be disturbed absent an abuse of discretion.  See TransAmerican Nat. Gas
Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). 
Severe sanctions, such as exclusion of the Trust Account Records as Neely
requested, that prevent a trial court=s decision on the
merits of a case cannot be justified absent a showing of a party=s flagrant bad
faith or callous disregard for the discovery rules, neither of which has been
shown on this record.  See TransAmerican, 811 S.W.2d at 918. 
Neely cites a number of cases as supporting sanctions for discovery abuse, but
none involve a party=s failure to give notice when serving a
subpoena on a non-party for discovery.[11]


Presuming that the Commission obtained the
Trust Account Records by subpoena without notice to Neely, Neely did receive
notice and an opportunity to object and be heard regarding the Commission=s request for
production of these records as early as June 2004, when he first responded to
the Commission=s motion to compel.  In response to the Commission=s motion to
compel, Neely did not assert any valid objection to the production of records. 
Therefore, any lack of notice and opportunity to be heard when the records were
first obtained did not result in any harm to Neely.

For the reasons stated above, the trial
court did not abuse its discretion in overruling Neely=s objections to
the Commission=s motion to compel or by declining to impose a Adeath-penalty@ discovery
sanction.  

Complaints Under the Exclusionary Rule








Neely claims, as part of his fifth issue,
that the trial court should have excluded from the evidence both the Ploch
Checks and Trust Account Records under the Acivil equivalent@ of the Afruits of the
poisonous tree@ doctrine.  The exclusionary rule, as codified in the
Texas Code of Criminal Procedure, is inapplicable to Neely=s case because the
Code of Criminal Procedure pertains to criminal actions.  See Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005); Vara
v. Sharp, 880 S.W.2d 844, 847, 851 (Tex. App.CAustin 1994, no
writ) (providing that evidence unconstitutionally seized by law enforcement
officers may not be admitted in a criminal proceeding or some quasi-criminal
civil proceedings).  Some courts have indicated that the exclusionary rule may
apply in civil cases when the proceedings are quasi-criminal in nature.  See Vara, 880 S.W.2d at
847, 851.  But see
Pine v. State, 921 S.W.2d 866, 872 (Tex. App.CHouston [14th Dist.] 1996, writ dism=d w.o.j.) (AThe applicability of the exclusionary
rule in civil cases, however, is uncertain.@).  However, the Supreme Court of Texas
has ruled that lawyer-disciplinary proceedings are civil in nature and not
quasi-criminal.  See Comm=n for Lawyer
Discipline v. Benton, 980 S.W.2d 425, 438 (Tex. 1998) (providing that
disciplinary proceedings are civil in nature); State Bar of Tex. v. Evans,
774 S.W.2d 656, 657 n.1 (Tex. 1989) (per curiam) (disapproving of lower court=s reference to
lawyer disciplinary actions as being Aquasi-criminal in
nature@).  Therefore, any
arguments that the exclusionary rule applies in this attorney-disciplinary
matter have no merit.[12] 
See Baxter v. Tex. Dep=t Human Res., 678 S.W.2d 265,
267 (Tex. App.CAustin 1984, no pet.) (declining to apply the
exclusionary rule to a civil case involving termination of parental rights
under the Texas Family Code); see also Benton, 980 S.W.2d at 438.  For
each of the reasons discussed above, we overrule Neely=s fifth issue.

 

 








The Commission=s Evidence in
Support of its Motion for Partial Summary Judgment

As part of his third issue, Neely claims
that the trial court erred in granting summary judgment over his objections to
the summary-judgment evidence because the Commission=s evidence is
incompetent.[13] 
Neely alleges that the Commission pointed to no evidence, affidavits, or other
witness testimony and that the attached summary-judgment exhibits are not
authenticated by affidavit or otherwise self-authenticated.  Neely asserted
these same objections in response to the Commission=s motion for
partial summary judgment; however, in order to preserve error, it was incumbent
upon Neely to obtain a ruling or a refusal to rule on these objections.  See
Dolcefino, 19 S.W.3d at 925.  The record does not contain a ruling by the
trial court on the summary-judgment objections in which Neely asserted these
complaints.[14] 
Therefore, Neely waived these summary-judgment objections.  See id. 

2.       The Commission=s Motion for Partial
Summary Judgment

In his fourth issue and in part of his
third issue, Neely contends that the trial court improperly granted summary
judgment because genuine issues of material fact remain based on the evidence
he presented and that the Commission=s evidence did not
demonstrate that Neely violated Rule 1.14(a). 








Summary-judgment orders in
attorney-disciplinary appeals are governed by traditional summary-judgment
standards.  See Fry v. Comm=n for Lawyer
Discipline, 979 S.W.2d 331, 333B34 (Tex. App.CHouston [14th
Dist.] 1998, pet. denied).  In a traditional motion for summary judgment, if the movant=s motion and summary-judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the nonmovant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  M.D. Anderson Hosp. & Tumor
Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).  In our de novo
review of a trial court=s summary judgment, we consider all the
evidence in the light most favorable to the nonmovant, crediting evidence
favorable to the nonmovant if reasonable jurors could, and disregarding
contrary evidence unless reasonable jurors could not.  Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  The evidence raises a genuine
issue of fact if reasonable and fair-minded jurors could differ in their
conclusions in light of all of the summary-judgment evidence.  Goodyear Tire
& Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). 
When, as in this case, the order granting summary judgment does not specify the
grounds upon which the trial court relied, we must affirm the summary judgment
if any of the independent summary-judgment grounds is meritorious.  FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).  

Rule 1.14(a), entitled ASafekeeping
Property,@ is set forth below in pertinent part:

A lawyer shall hold
funds and other property belonging in whole or in part to clients or third
persons that are in a lawyer=s possession in connection with a representation separate from the
lawyer=s own property.  . . .  Complete
records of such account funds and other property shall be kept by the lawyer
and shall be preserved for a period of five years after termination of the
representation.

Tex. Disciplinary R. Prof=l Conduct 1.14(a),
reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. G app. AB1 (Vernon 2005).

In its motion for partial summary
judgment, the Commission alleged the following:  








$       
Neely failed to
keep his funds separate from his clients= funds; 

$       
Neely paid
employee wages and business and personal expenses from the same account; and

$       
Neely failed to
preserve five years of records generated in regard to his Trust Account.  

As evidence in support of the motion, the Commission
attached, among other things, excerpts from Neely=s deposition and
the Trust Account Records.  This evidence demonstrated that Neely=s only trust
account for the years of 2001 to 2002 was an IOLTA account in his name at Frost
National Bank.  From this account, Neely paid business-related expenses, such
as Ploch=s salary and
bonuses as well as personal expenses including auto repair, utilities,
groceries, personal taxes, property taxes, and charitable donations to
churches.  The checks attached as summary-judgment evidence and discussed in
Neely=s deposition were
written by Neely during this time period for numerous personal- and
business-related expenses.  See Brown v. Comm=n for Lawyer
Discipline, 980 S.W.2d 675, 680 (Tex. App.CSan Antonio 1998,
no pet.) (concluding evidence was sufficient to support a determination that an
attorney violated Rule 1.14(a) trust provisions by writing checks for personal
and office expenses from a joint account shared with a client).  Neely
confirmed in his deposition that he kept money in the account and paid his
personal taxes from that account.  The Trust Account Records also show that
Neely deposited personal funds into the Trust Account, including a gift from a
family member for Neely=s son and a check payable to Neely and his
wife from a title company.  

The Commission also attached an affidavit
and spreadsheet prepared by accountant Tom Prude, who was hired by Neely.  The
Prude affidavit expressly provides in relevant part, 








Accordingly,
it is my professional opinion that the funds due clients from Mr. Neely=s Iolta account
during the time periods identified by the Iolta bank account records received
from the Commission for Lawyer Discipline, other than Mr. Neely and his wife,
were never commingled such that they were not available to the clients within a
reasonable period of time after they were deposited into Mr. Neely=s Iolta account
and that the Balance [sic] in Mr. Neely=s Iolta account
never dropped below the total sums of monies he owed any client at any time
until the clients negotiated their checks given to them by Mr. Neely.

Although Neely points to language in the Prude
affidavit as supporting his argument that he did not commingle funds, Neely=s interpretation
of the affidavit is unsupportable.  In the affidavit, Prude opines that no
commingling occurred because Athe funds due clients from Mr. Neely=s Iolta account@ were not
commingled such that the funds Awere not available to the clients within a
reasonable period of time after they were deposited into Mr. Neely=s Iolta account.@  The affidavit
also indicates that no commingling occurred because Athe Balance [sic]
in Mr. Neely=s Iolta account never dropped below the total sums of
monies he owed any client at any time until the clients negotiated their checks
given to them by Mr. Neely.@  Neither opinion in the Prude affidavit,
upon which Neely relies, refutes the Commission=s allegation that
Neely violated Rule 1.14(a)=s trust-account provisions by failing to
keep his personal funds separate from client funds within the same Trust
Account or by failing to preserve the Trust Account Records for five years.  See
Fry, 979 S.W.2d at 336. 








The spreadsheet prepared by Prude reflects
money in the Trust Account from April 4, 2001 through May 8, 2002.  The
spreadsheet contains a column identified as ATotal Funds Due
Clients,@ in which the
amount shown represents funds belonging to clients.  Neely confirmed in his
deposition that this column represents funds due to clients other than Neely or
his wife.[15] 
The amount in this column remained constant at $9,543.00 from November 15, 2001
to February 7, 2002.  Neely confirmed in deposition that on November 15, 2001,
$259,435.43 in the Trust Account belonged to him Aand/or@ his wife. 
However, another column identified as ATotal Funds in the
Account@ reflected that
during the same period, the amount of total funds in the account decreased by
$173,481.96.  The checks and financial statements, attached as summary-judgment
evidence, show that during this same time period, Neely signed numerous checks
for business and personal expenses from the Trust Account.  On this basis, we
conclude the Commission conclusively proved that Neely violated Rule 1.14(a) by
failing to keep his funds separate from client funds in the Trust Account and
that Neely deposited personal funds into the Trust Account and paid for
personal and business-related expenses from the Trust Account.  See Tex.
Disciplinary R. Prof=l Conduct
1.14(a) (providing that a lawyer=s personal
property should be kept separate from property belonging to clients); Fry,
979 S.W.2d at 335.

Furthermore, the Commission=s evidence
establishes that Neely failed to maintain records for the Trust Account for
five years as required by Rule 1.14(a).  In deposition, Neely admitted he did
not have any records dating to periods earlier than the years 2000 and 2001 and
attributed this lack of records to flooding or to Ploch=s alleged theft of
documents.  Moreover, the Trust Account Records Neely produced in response to
the Commission=s discovery request spanned only the period from April
2001 to July 2002; he did not produce any other Trust Account Records even
though the Commission requested records through January 2004.  This evidence
conclusively shows that Neely did not preserve records on the Trust Account for
five years as required by Rule 1.14(a).  See Tex.
Disciplinary R. Prof=l Conduct
1.14(a).

Once a movant establishes its right to
summary judgment as a matter of law, the burden shifts to the non-movant to
raise a genuine fact issue precluding summary judgment.  See Fry, 979
S.W.2d at 335.  Because the Commission established its right to judgment as a
matter of law, the burden then shifted to Neely to adduce evidence raising a
fact issue precluding summary judgment.  Id. at 336.








Neely claims to have submitted evidence
that refuted the Commission=s allegations that he violated Rule
1.14(a) or established the existence of material fact.[16] 
For support, Neely points to his affidavit and excerpts from his deposition in
which he asserts that he held money belonging to himself, his wife, and son as
his clients in the Trust Account.  Even if Neely considered himself and his
family members as clients, evidence of this belief does not raise a fact issue
as to whether Neely kept personal money or property separate from clients= funds in the same
Trust Account.[17] 
See Tex. Disciplinary R. Prof=l Conduct
1.14(a); Fry, 979 S.W.2d at 336 (providing that evidence that
raises only conclusions does not raise a fact issue).  Rather, Neely=s stated belief
strengthens the Commission=s position.  See Fry, 979 S.W.2d at
336.  Neely also points to his deposition testimony in which he stated that he
and his wife had an agreement to disburse the money at her discretion.  Rule
1.14(a) addresses the manner in which an attorney is required to keep funds
pending disbursement and expressly prohibits commingling of funds even with
client consent.[18] 
See Tex. Disciplinary R. Prof=l Conduct
1.14(a); Brown, 980 S.W.2d at
680 (rejecting argument under Rule 1.14(b) that a client consented to
commingling when considering lack of express language allowing consent to
commingle in rules, the state of the record, and the underlying policies
prohibiting commingling).  Neely=s evidence in this
regard does not raise a genuine issue of material fact that would preclude the
Commission=s right to summary judgment.  See Fry, 979
S.W.2d at 337.








Neely also claims to have raised a fact
issue involving his failure to preserve records on the Trust Account for the
requisite amount of time.  Neely points to his deposition testimony, in which
he acknowledged that he produced only the Trust Account Records for 2001 and
2002 because he Alooked and those were the only things [he]
could find.@  Neely admitted in deposition that he did not have
any other documents Abeyond that@ time periodCmeaning Aearlier than 2000
or 2001.@  Neely denied in
deposition having any documents Aearlier than 2000
or 2001@ because the
original documents either were removed by Ploch or destroyed in a flood that
occurred sometime between the years 2000 and 2002.  Although the information
arguably may have raised a factual dispute for the years 2000 and 2001 and the
previous years, the factual dispute does not defeat Neely=s failure to retain
records for the subsequent years when the Commission=s request for
records spanned the time period from December 1998 to January 2004.  Neely
presented no evidence that he lost the Trust Account Records in the flood
waters, but even if we were to presume that this were true, Neely presented no
records or statements from the Trust Account for the years following the
alleged flooding through 2004.  To the contrary, the deposition evidence
supports a conclusion that he did not preserve the Trust Account Records as
required by Rule 1.14(a).  See id.  Neely has raised no genuine issues
of material fact by this evidence.  See id.








The Commission=s evidence
supports a determination that Neely commingled his personal funds with those of
his clients in the Trust Account in violation of Rule 1.14(a).  See Tex.
Disciplinary R. Prof=l Conduct
1.14(a); Brown, 980 S.W.2d at
680.  Furthermore, the Commission=s evidence
established that Neely failed to preserve the Trust Account Records for five
years as required by Rule 1.14(a).  Tex. Disciplinary R. Prof=l Conduct 1.14(a); Tex. R.
Disciplinary P. 1.06(V)(1) reprinted in Tex.
Gov=t Code Ann., tit. 2, subtit. G app. AB1 (Vernon 2005). 
No genuine issues of material fact exist regarding whether Neely committed
professional misconduct in violation of Rule 1.14(a).  See Fry, 979
S.W.2d at 336 (holding that attorney did not raise genuine issue of material
fact to preclude summary judgment).  The Commission=s evidence
established its entitlement to judgment as a matter of law.  See id.  Accordingly,
we must affirm the trial court=s summary judgment holding that Neely
committed professional misconduct because he violated a disciplinary rule.  See
Cluck v. Comm=n for Lawyer Discipline, 214 S.W.3d 736,
740 (Tex. App.CAustin 2007, no pet.).  We therefore overrule Neely=s issues three and
four.

C.      Did the trial court abuse its discretion in
entering a final judgment of disbarment?

In his eighth issue, Neely asserts that
the trial court=s order of disbarment is excessive and not
warranted under the circumstances.  A trial court has broad discretion to
determine whether an attorney who is guilty of professional misconduct should
be reprimanded, suspended, or disbarred.  State Bar of Tex. v. Kilpatrick,
874 S.W.2d 656, 659 (Tex. 1994) (per curiam); Kaufman v. Comm=n for Lawyer
Discipline, 197 S.W.3d 867, 878, (Tex. App.CCorpus Christi
2006, pet. denied); see Tex. R.
Disciplinary P. 2.15, 3.03, 3.16, reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. G app. A-1 (Vernon
2005).  An appellate court should reverse the trial court=s decision only if
an abuse of discretion is shown.  Eureste v. Comm=n for Lawyer
Discipline, 76 S.W.3d 184, 202 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  A trial court abuses its discretion only if it acts in
an unreasonable and arbitrary manner, or when it acts without reference to any
guiding principles.  Id.  








In determining the appropriate sanction
for attorney misconduct, a trial court considers the following factors:  (1)
the nature and degree of the professional misconduct, (2) the seriousness of
and the circumstances surrounding the misconduct, (3) the loss or damage to
clients, (4) the damage to the profession, (5) the assurance that those who
seek legal service in the future will be insulated from the type of misconduct
found, (6) the profit of the attorney, (7) the avoidance of repetition, (8) the
deterrent effect on others, (9) the maintenance of respect for the legal
profession, (10) the trial of the case, and (11) other relevant evidence
considering the attorney=s personal and professional background.  Kilpatrick,
874 S.W.2d at 659; Curtis v. Comm=n for Lawyer
Discipline, 20 S.W.3d 227, 235 (Tex. App.CHouston [14th
Dist.] 2000, no pet.).  An attorney=s disciplinary
record is admissible on the issue of the appropriate measure of discipline to
be imposed.  Tex. R. Disciplinary P.
3.10, reprinted in Tex. Gov=t Code Ann., tit. 2, subtit.
G app. A-1 (Vernon 2005); Musslewhite v. State Bar of Tex., 786 S.W.2d
437, 445 (Tex. App.CHouston [14th Dist.] 1990, writ denied). 
A trial judge is obligated to determine punishment based on these guidelines.  Curtis,
20 S.W.3d at 234B35. 

In light of these guiding principles, we
cannot conclude the trial court abused its discretion in ordering the sanction
of disbarment.  The evidence supports a determination that Neely violated the
trust-account provisions of Rule 1.14(a).  Among an attorney=s foremost ethical
obligations is the proper handling of clients= funds and trust
accounts.  See Brown, 980 S.W.2d at 680.  Moreover, Neely=s failure to
produce the Trust Account Records in response to proper discovery requests and
the trial court=s order is a particularly relevant fact
weighing heavily against him.  See Minnick v. State Bar of Tex., 790
S.W.2d 87, 93 (Tex. App.CAustin 1990, writ denied) (weighing same
factor in determining disbarment issue).  Neely=s lengthy
disciplinary record began in 1993, with a private reprimand for failing to
respond to a request for information, and progressed through 2005, with a
three-year partially-probated sentence for numerous advertising violations. 
Thus, on this record, the trial court did not abuse its discretion in entering
the final judgment of disbarment.  See Kaufman, 197 S.W.3d at 879. 
Therefore, we overrule Neely=s eighth issue.

D.      Did the
trial judge commit error by considering purported ex parte communications and
by not recusing himself from the disciplinary proceedings on this basis?

Neely=s seventh issue
and part of his sixth issue pertains to a letter that Neely refers to as an Aex parte
communication@ from Ploch to the trial judge.  Neely complains in
his sixth issue that the trial judge committed error in considering this
letter.  Neely asserts in a seventh issue that the trial judge should have
recused himself for inappropriately considering the letter from Ploch that
purportedly was sent to the judge=s chambers between
the September 10 and October 17 hearings.  








Because Neely withdrew his motion to
recuse against the trial judge on the basis of the alleged ex parte
communications, Neely has waived his complaint as to his seventh issue.  See
Tex. R. App. P. 33.1(a); see,
e.g., Watson v. Johnson, No. 01-99-00281-CV, 2001 WL 204736, at *2
(Tex. App.CHouston [1st Dist] Mar. 1, 2001, no. pet) (involving
party who withdrew motion to recuse and waived complaint on appeal about the
trial court=s error by not obtaining an adverse ruling); see
also Broussard v. State, No. 05-99-01039-CR, 2000 WL 1612152, at *1 (Tex.
App.CDallas Oct. 30,
2000, pet. ref=d) (involving a party who failed to pursue or obtain a
ruling on any motion to disqualify a judge).  Therefore, we overrule Neely=s seventh issue.

Regarding his sixth issue, we note that
the record reflects the letter was not admitted into summary-judgment evidence,
and therefore the letter was not part of the trial judge=s consideration in
this case.  See Risker, 94 S.W.3d at 635 (overruling a party=s objection to the
admission of evidence because the party failed to demonstrate that the
admission of the evidence probably caused the rendition of an improper
judgment).  The letter of which Neely complains appears in the record only as
an exhibit to a copy of papers filed in Neely=s federal action. 
The record does not support Neely=s contention that
the trial court ever considered the letter from Ploch.  See Meachum v. Comm=n for Lawyer
Discipline, 36 S.W.3d 612, 616 (Tex. App.CDallas 2000, pet.
denied) (involving a complaint that the trial court improperly considered
admitted evidence).  Contrary to Neely=s assertions, the
record reflects that at a proceeding in June 2008, the trial judge made the
following remarks about the letter from Ploch:

[TRIAL JUDGE]:    Remind
me, was the motion of recuse that I supposedly looked at some kind of letter
from Ms. Ploch?

[COMMISSION]:    That
is correct, Your Honor.

[TRIAL JUDGE]:    That=s what I thought it was.

[COMMISSION]:    There
was a letter that had been sent by the lady in October.








[TRIAL JUDGE]:    And
I=d like to just for the record, I=d like the appellate court to know
in case it gets there, in my office I=ve got my staff.  Any time I get an ex parte in a case it
goes into the file and I don=t see it and that=s what happened with this one.  I
[have] never seen it.

First I heard of it
when I saw this motion of recusal, so I have never seen any letter from that
lady.  I do remember she was at several of the hearings, but I=ve never talked with her or had any
communication.

The record does not support Neely=s contention that
the trial court considered the letter. 

We also construe Neely=s sixth issue to
encompass a complaint that the trial judge (Robison) engaged in ex parte
communication with another judge (Ramsay) concerning a prior disciplinary
hearing involving Neely.  Neely points to the trial judge=s comments at a
hearing; however, the record reflects that Neely made no objection to these
comments.  To preserve a complaint for appellate review, a party must make a
timely request, objection, or motion with sufficient specificity to apprise the
trial court of the complaint.  Tex. R.
App. P. 33.1(a).  Failure to object and obtain an adverse ruling waives
review of an error on appeal.  Therefore, we overrule Neely=s sixth issue.  

E.      Did the
disciplinary process deny the attorney his rights to constitutional due
process?

In his ninth and final issue, Neely
complains that the disciplinary proceeding did not afford him the opportunity
to develop the record in a meaningful way to support his constitutional
due-process claims.  Neely also complains that by granting summary judgment in
the matter, the trial court refused to allow a jury trial.  As a result, Neely
claims, the disciplinary process effectively deprived him of constitutional due
process.  








As to this issue, Neely has failed to provide argument,
analysis, citations to the record, or legal authority.  In his only citation to the record, Neely
refers this court to fourteen pages in the clerk=s record for his
argument and authority on this issue.  The authority to which he cites pertains
to an argument in support of his pleadings filed in a federal action against
the Commission, the State Bar of Texas, the trial judge in this matter, and
Ploch, among others.  By failing to brief this issue, Neely has waived it.  See Tex. R. App. P. 38.1(h); WorldPeace v.
Comm=n for Lawyer Discipline, 183 S.W.3d 451,
460 (Tex. App.CHouston [14th Dist.] 2005, pet. denied) (providing
that failure to offer argument, citations to the record, or authority waives
complaint on review); San Saba Energy, L.P. v. Crawford, 171 S.W.3d 323,
338 (Tex. App.CHouston [14 Dist.] 2005, no pet.) (holding that, even
though courts interpret briefing requirements reasonably and liberally, parties
asserting error on appeal still must put forth some specific argument and
analysis citing the record and authorities in support of the parties= argument);
Curtis, 20 S.W.3d at 231 n.2 (providing that a reviewing court is under no
obligation to independently search the record for evidence supporting an
appellant=s position).  Neely=s ninth issue is
overruled.

Having overruled each of Neely=s appellate
issues, we affirm the trial court=s judgment.

 

 

 

 

 

/s/      Kem
Thompson Frost

Justice

 

 

 

Panel consists of Chief Justice Hedges, and Justices Yates and Frost.

 









[1]   The Commission, in serving the subpoena on Frost
National Bank, operated under the belief that section 59.006 of the Texas
Finance Code authorized the Commission to obtain the Trust Account Records by
subpoena without notice to Neely.  The trial court indicated at a hearing in
October 2007, that the Finance Code did not authorize the Commission=s conduct and that the Finance Code was inapplicable
to the facts of this case.  





[2]  The Commission indicated that the records obtained
from Frost National Bank spanned a period of sixteen months from April 2001 to
July 2002, but did not encompass the entire period of time for which records
were requested of Neely, from December 1998 through January 2004.





[3]  The Commission asserted that the documents Neely
produced in his supplemental response were copies of the same Trust Account
Records that the Commission had obtained by subpoena, filed with the court in 2004, and produced to Neely in the course of the
proceedings.  Consequently, the Commission amended its original petition to
reflect the fact Neely also had violated another aspect of Rule 1.14(a),
requiring an attorney to preserve five years of records on the Trust Account. 





[4]  When the Commission amended its petition, the only
remaining claims were under Rule 1.14(a); if the trial court granted the
Commission=s motion for partial summary judgment, then the trial
court=s ruling would be dispositive of the Commission=s entire case against Neely.





[5]  The Commission claimed to have obtained these checks
from the Trust Account Records.  The record reflects that the checks submitted
with the summary judgment evidence are not the same checks Ploch filed with her
grievance.





[6]  Without citing any authority, Neely asserts that
failure to comply with the procedural requirements of the Texas Disciplinary
Rules of Procedure 3.02, 3.06, and 3.07 deprived him of constitutional due
process rights, including the right to object to the appointment of Judge
Robison and seek that judge=s removal.  At
trial, Neely did not attack the constitutionality of whether non-compliance
with these rules abridged his due process rights.  Neely raises this issue and
his complaints under Rules 3.02, 3.06, and 3.07 for the first time on appeal. 
Any arguments regarding Neely=s due process
rights were waived when Neely failed to raise these arguments in the trial
court.  See Tex. R. App. P. 33.1(a); Risker, 94
S.W.3d at 630; Belt, 970 S.W.2d at 574. 





[7]  The Ploch Checks were not part of the summary
judgment evidence.  However, the Ploch Checks were admitted at the October 2007
hearing along with Ploch=s initial grievance to the State Bar and an affidavit
by Ploch.  In the affidavit, Ploch denied stealing any records from Neely=s office.  The Commission offered these documents to
refute Neely=s allegation that the Ploch Checks were stolen. 





[8]  Neely asserts that the Commission should have been
estopped from relying on the checks because, he claims, the Ploch Checks should
have been excluded subject to a trial court=s
order entered prior to the initiation of this suit.  However, the trial court
order to which Neely cites stemmed from a prior proceeding between Ploch and
Neely.  The Commission was not a party to that action.  On this basis, Neely=s argument lacks merit.  See Acevedo v. Comm=n for Lawyer Discipline, 131 S.W.3d 99, 106 (Tex. App.CSan Antonio 2004, pet. denied); Richards v. Comm=n for Lawyer Discipline, 35 S.W.3d 243, 249 (Tex. App.CHouston [14th Dist.] 2000, no pet.).





[9]  Although Neely asserts that the Commission violated
several constitutional due process rights, Neely has cited only authority in
support of a privacy interest in the Trust Account Records.  Neely has neither
identified nor indicated what other constitutional due process rights could
have been violated by the Commission=s
conduct.





[10]  See Matagorda County Hosp. Dist. v. Burwell, 94 S.W.3d 75 (Tex. App.CCorpus Christi 2002), rev=d on other grounds, 189 S.W.3d 738 (Tex. 2006) (per
curiam) (involving exclusion of evidence for failure to timely supplement a
discovery response under Rule 193.6(a)); Villegas v. Tex. Dep=t of Transp., 120 S.W.3d 26 (Tex. App.CSan Antonio 2003, pet. denied)
(involving exclusion of expert affidavit for a party=s failure to timely disclose the
material).





[11]  See Best Indus. Uniform Supply Co. v. Gulf Coast Alloy Welding, Inc., 41 S.W.3d 145, 148 (Tex. App.CAmarillo 2000, pet. denied)
(holding that a Asudden death@ sanction was excessive in response
to a party=s failure to amend a witness list
with a substituted witness because it destroyed the trial court=s opportunity to rule on the merits
of the case); Schein v. Am. Rest. Group Inc., 852 S.W.2d 496, 496B97 (Tex. 1993) (per curiam)
(involving a party=s failure to comply with a
discovery request).  Neely has provided no relevant authority to support the
mandatory exclusion of the Trust Account Records or the imposition of a Adeath penalty@ sanction on the facts presented in
this case.  Our own independent research uncovered a case with similar facts in
which the trial court levied a fine for discovery abuse.  See Sanchez v.
Rodriquez, No. 13-00-00059-CV, 2001 WL 34616782, at *10B11 (Tex. App.CCorpus Christi Oct. 4, 2001, no
pet.) (not designated for publication) (providing that a fine levied as a
sanction was not excessive for discovery abuse involving a party who failed to
provide notice of a subpoena served on a bank in attempting to obtain an
attorney=s IOLTA account records).





[12]  For support, Neely points to the case of Schenck
v. Ebby Halliday Real Estate, Inc., 803 S.W.2d 361, 372 (Tex. App.CFort Worth 1990, no writ).  However, we distinguish
that case on the basis that the Schenck court determined that the
appellants could have obtained the information by serving a request for
production and did not; however, the Commission in this case did serve the
request for production and attempted to obtain the requested information.  See
id.  We also distinguish Vara v. Sharp, 880 S.W.2d 844, 847 (Tex.
App.CAustin 1994, no writ), upon which Neely relies, from
the case under review on the basis that the civil proceeding in Vara
related to penal use of a tax statute and was quasi-criminal in nature, unlike
the disciplinary case at hand.  See id.  We distinguish Day &
Zimmerman, Inc. v. Strickland, 483 S.W.2d 541 (Tex. App.CTexarkana 1972, writ ref=d n.r.e), as cited by Neely, on the basis that the records at issue in
this case were made available to Neely when they were filed in the trial court
in May 2004, unlike the records in Day & Zimmerman, upon which an
expert report in that case was based and determined to be inadmissible
evidence.  See id. at 546 (involving objection to expert report as
hearsay spawned and based upon hearsay from records not made available to other
litigants).





[13]  To the extent that Neely claims the trial court erred in admitting (in
his fifth issue) and in considering (in part of his third issue and fifth
issue) the Trust Account Records because the records were improperly obtained
without notice to him, we have determined the trial court did not abuse its
discretion in admitting the Trust Account Records.  Therefore, the Commission=s summary-judgment evidence has not changed, and the
Trust Account Records, as summary-judgment evidence, were properly considered
by the trial court.





[14]  Nonetheless, even if Neely had preserved error, he would not prevail on
his objections to the summary-judgment evidence.  The Commission=s evidence consisted of Neely=s deposition testimony and other
exhibits, each of which Neely discussed in the deposition.  Deposition
transcripts and the exhibits discussed in the deposition need no authentication
and constitute proper summary judgment evidence.  See Morgan v. Anthony,
27 S.W.3d 928, 929 (Tex. 2000) (per curiam) (providing that an interrogatory
answer discussed in excerpts of deposition, which was attached to summary
judgment motion as evidence, was part of the summary judgment record and was
competent summary judgment evidence when it became a deposition exhibit); see
also McConathy v. McConathy, 869 S.W.2d 341, 342 (Tex. 1994) (per curiam).  





[15]  Neely has indicated that he is his own client.  We
address this argument in more detail below.





[16]  Neely points to parts of his deposition as
supporting his claims.  However, some of the excerpts to which Neely refers
were not attached to his response to the Commission=s motion for partial summary judgment nor were the
excerpts part of the Commission=s evidence.  We
cannot consider evidence that was not before the trial court.  See Tex. R. Civ. P. 166a(d).  Therefore,
this evidence does not raise a fact issue nor operate to defeat the Commission=s evidence.  See Tex. R. Civ. P. 166a(d).





[17]  Neely has provided no authority supporting an
argument that he may keep personal funds in the same account as Aother@ clients= funds even if he considers himself to be his own
client.





[18]  Neely argues that Rule 1.14 authorizes an attorney
to use discretion in disbursing funds from an IOLTA account.  We construe this
argument to be part of his fourth issue in which he claims that the trial court
incorrectly applied the law.  Rule 1.14(a) expressly prohibits commingling of
fundsCeven funds pending disbursement.  See Tex. Disciplinary R. Prof=l
Conduct 1.14(a); Brown,
980 S.W.2d at 680 (rejecting similar argument under Rule 1.14(b)).  Although Neely points to Continuing Legal Education
materials in the record that he submitted to the trial court regarding the
meaning of the terms Ashall@ and Ashould,@ we
do not consider these materials because they were submitted in December 2007,
after the trial court granted the Commission=s
motion for partial summary judgment.  See Valores Corporativos, S.A. de C.V.
v. McLane Co., 945 S.W.2d 160, 162 (Tex. App.CSan Antonio 1997, writ denied) (providing that evidence filed after
signing summary judgment is not part of the record).